## GERAGHTY *v.* SUBURBAN TRUST COMPANY

[No. 189, September Term, 1964.]

198

*Decided March 31, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY and OPPENHEIMER, JJ., and DUCKETT, Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Joseph Zitomer* and *Jack S. May* for appellant.

*William W. Beckett,* with whom were *Duckett, Orem & Christie* on the brief, for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

This appeal results from an order of the Circuit Court for Prince George's County sustaining, without leave to amend, a demurrer to appellant's declaration, which she claims sets forth, in two counts, a cause of action for slander.

The first count, in substance, alleges the following: On November 26, 1963, appellee was engaged in the banking business, having its principal offices in Prince George's County, Maryland. Appellant was the sole owner of a business known as Penco Decorators, located in Bethesda, Maryland. On the date aforementioned, appellant, in the course of her business, had an appointment with appellee corporation, acting through its officer and employee Lester J. Crawley, "for the purpose of securing an F.H.A. loan to finance the proposed sale of labor and material to one of [appellant's] customers." At this time, "in the presence of employees of the said defendant and members of the community" Crawley spoke false, malicious, and defamatory words to appellant in reference to her business. The words in question are, "I doubt very much if this will go through," and, "I think you are just a front for Mr. Provost." These words

were uttered in a "loud, belligerent, arrogant, and disrespect-ful voice and manner" and *meant* (italics ours) that appellant was not the true owner of her business, but was "a sham, fraud, deception and artifice for one Norwood E. Provost" and was "therefore, not honest, trustworthy, dependable or a woman of character." As a result of the speaking of these words, appel-lant alleges that she "was injured in her business, her good name, fame and credit and was brought into public scandal, in-famy and disgrace" and that she "further suffered embarrass-ment and humiliation, all of which was most harmful, detri-mental and injurious" to her.

Count two of the declaration states the same basic facts al-leged in the first count, but claims that since it is a criminal act to make, knowingly, a false statement upon the loan application in question, Mr. Crawley's words were, *in effect,* accusing ap-pellant of committing a crime and constituted, therefore, slander *per se.*

General damages were claimed in the declaration, but no spe-cial damages were alleged under either count thereof.

The appellant contends that she has made in count one a suf-ficient allegation of facts to show that false words were spoken to, and of, her, in the presence of others, of such a character as to constitute slander *per se,* on the ground that said words tended directly to prejudice her in her trade and business; and in count two she has shown that the said falsely spoken words were slanderous *per se* on the theory that they directly con-tained an imputation that she had committed a crime involving moral turpitude, for which corporal punishment was the imme-diate penalty.

In Maryland, the pleader who alleges slander may resort, in proper cases, to the short form provided by the Code (1957), Article 75, Section 14 (34), or he may adopt the common-law form of alleging the purported slander.

The appellee suggests, with considerable force, several other reasons as to why the trial court was correct in sustaining the demurrer; however, we base our decision on the narrow ground hereinafter stated.

It will be noted that the narr filed by the appellant has some peculiar and unusual aspects. It alleges that appellant was in

the Silver Spring Branch Office of the appellee (which is some five miles distant from where appellant conducts her business on Wisconsin Avenue in Bethesda) ; and she was there "for the purpose of securing an F.H.A. loan [in the first count]," and "was submitting a written application for said loan [in the second count]." At no point does she allege that *she had signed* the application. Nor is there any allegation that any person in whose presence the words complained of were spoken knew her, knew of her decorating business, knew for what purpose she was at the bank, or that any person who heard the words attributed to them anything of a derogatory nature.

Thus we have a situation where a lady is in the office of an officer of a bank some five miles distant from where she conducts her business, with no indication that she or her business operations were known in the vicinity of the bank's office. The officer says to her, "I doubt very much if this will go through. I think you are just a front for Mr. Provost." There is no intimation that anyone in whose "presence" the words were spoken knew to what the word "this" referred, or knew who Mr. Provost was, other than the speaker and appellant.

Surely the above words, in and of themselves, cannot soundly be held to convey a defamatory import. We find no definition of the word "front" as used in the above context in the regular dictionaries. However, we find in the *Dictionary of American Slang,* among others, the following : "a respectable, impressive-appearing, or successful person chosen to represent a group or impart to the group an appearance of respectability or success" ; "a prospective customer"; "legal or normal activities, usually business activities, used to mask illegal activities, gambling or the like." And it is a matter of general knowledge that in common parlance, the speaker may have imparted, by the words spoken, no more than the impression that the speaker was saying, "I think you are a straw party," or "I think you have an undisclosed or silent principal." See *Yelle v. Cowles Publ. Co.,* 278 P. 2d 671, 674, wherein the Supreme Court of Washington stated : "We must not be guided entirely by what Webster says [the word] means, but by what the average reader * * * thinks it means."

It is elementary in the law of libel and slander that the pre-

sumption that words are defamatory arises much more readily in cases of libel than in slander. *Thompson v. Upton,* 218 Md. 433. We have no hesitancy in ruling that the words spoken could have communicated an innocent and innocuous meaning to those in whose "presence" they were uttered, even if we assume, without deciding, that they possibly could have imparted the defamatory meanings attributed to them by the appellant in her innuendoes, and also assume, without deciding, that she could properly make use of her innuendoes to do so. Compare *Walker v. D'Alesandro,* 212 Md. 163.

Another fundamental principle in the law of slander is that the defamatory words must be "published." Publication, in the law of slander, means the transmission of ideas and thoughts to the perception of a person, other than the party speaking and the party spoken of. *Gambrill v. Schooley,* 93 Md. 48, 60. We have stated above that there was no allegation in appellant's declaration that anyone (other than she and the bank officer) in whose presence the words were spoken knew her, knew what her business was at the bank, knew what the officer was talking about, or gleaned anything of a defamatory nature from the words spoken; and the words spoken, if considered by themselves, could have been interpreted as having a harmless meaning.

Although there is a slight amount of authority to the contrary, 53 C.J.S., *Libel and Slander,* § 169 (b) states the general, and we think the proper, rule thus:

> "Ordinarily, where the words complained of are ambiguous in meaning * * * there must be averments that third persons [i.e. at least a third person] understood the language and its defamatory import. Since, in order to constitute a publication, it is necessary that some third person understood the defamatory matter * * *, where the words are capable of conveying the defamatory meaning claimed for them, and also equally capable of conveying some other and innocent meaning, there must be averments that third persons [again at least a third person] understood the language as conveying the alleged defamatory meaning."

Also see the cases cited thereunder and compare 33 Am. Jur., *Libel and Slander,* § 90.

We, therefore, hold that the trial court correctly sustained the demurrer.

*Order affirmed, with costs.*