HERBERT S. ZINZ *v.* EVANS AND MITCHELL
INDUSTRIES ET AL.

[No. 821, September Term, 1973.]

*Decided July 17, 1974.*

The cause was argued before THOMPSON, MOYLAN and
DAVIDSON, JJ.

*Charles E. Brooks,* with whom were *William N. White* and
*Brooks & Turnbull* on the brief, for appellant.

*A. Gwynn Bowie, Jr.,* with whom were *William C. Stifler,
III,* and *Niles, Barton & Wilmer* on the brief, for appellees.

MOYLAN, J., delivered the opinion of the Court.

At fundamental issue is the application of the so-called
"Long Arm" Statute. The appellant, Herbert S. Zinz, filed a

two-count declaration alleging libel against the non-resident appellees, Evans and Mitchell Industries and Ernie W. Mitchell. The appellees, a Georgia corporation and its vice-president, were served by registered mail in Georgia. The appellees, by Maryland counsel, timely filed a Motion Raising Preliminary Objections on the ground that the court lacked personal jurisdiction over them because they were residents of the State of Georgia, were not subject to suit in Maryland under Article 75, Section 96, and on the ground that the service of process on them violated the due process clause of the Fourteenth Amendment. Following a full hearing, Judge Joseph C. Howard, in the Superior Court of Baltimore City, granted the appellees' motion and entered a judgment in their favor for costs. The appellant here appeals the granting of that motion.

The facts are essentially undisputed. The appellant is a citizen of the State of Maryland. The appellee Evans and Mitchell Industries is a Georgia corporation, having its primary place of business in the State of Georgia. The appellee Ernie W. Mitchell is an individual residing in the State of Georgia. There is no allegation that either of the appellees ever physically entered the State of Maryland or ever had any connection with the State of Maryland on other than the single occasion now in issue. The appellees were considering the purchase of land in the State of Maryland for development as a business venture. In exploring this possibility, they dealt with the appellant.

Early in the negotiating stage, the effort aborted over an apparent disagreement between the appellant, on the one hand, and the Union Trust Company of Maryland, on the other hand. The appellees agreed with the position taken by the Union Trust Company and withdrew from the Maryland venture. The subject of the libel action is a letter, dated August 16, 1972, which was sent by Ernie W. Mitchell, vice-president of Evans and Mitchell Industries, to Mr. Armand H. Levin, the vice-president of the Union Trust Company of Maryland. The letter read:

"Dear Mr. Levin:

At the present our proposed partner in Baltimore is

emphatic about receiving an agreement which is enclosed and which is unacceptable to us. Should this not be a part of our purchase his attorney will proceed with a suit against your institution of which we could be made a part; or regardless, would be involved in should it reach the courtroom. Needless to say, law suits do not impress stockholders.

It is our regret to inform Union Trust that after weighing all circumstances we must withdraw from this acquisition. Many times it is better to find the rotten apple before you buy the bushel. Luckily for all concerned the apple was discovered before more time and dollars were spent.

I am very sorry that your attorneys went to the effort of drafting the sale agreements; which, by the way, were excellent. I would like to assure you, however, that we were as shocked as you were concerning the last minute fees.

A letter from you acknowledging this matter would be appreciated."

The letter was written in Georgia and mailed from Georgia. It was received in Maryland. Copies of the letter were sent to four individuals, two of whom were residents of Baltimore County, Maryland.

By the Acts of 1964, ch. 95, Maryland became one of the first states to adopt a comprehensive and expansive "Long Arm" Statute. The Maryland act was essentially based upon the provisions of the Uniform Interstate and International Procedure Act, 9B Uniform Laws Ann. 307-310 (1966). The Uniform Act was based in turn upon prior enactments of many states, codifying in some instances the Supreme Court decisions regarding the constitutional basis for acquiring *in personam* jurisdiction over non-resident defendants. See *International Shoe Co. v. Washington,* 326 U. S. 310 (1945); *McGee v. International Life Ins. Co.,* 355 U. S. 220 (1957); *Hanson v. Denckla,* 357 U. S. 235 (1958). See generally Auerbach, *The "Long Arm" Comes to Maryland,* 26 Md. L. Rev. 13 (1966).

The Maryland "Long Arm" Statute is now codified as Courts Article § 6-103. The heart of the statute, and the provision which concerns us here, is Section 96 which reads as follows:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) Transacting any business in this State;

(2) Contracting to supply goods, food, services or manufactured products in this State;

(3) Causing tortious injury in this State by an act or omission in this State;

(4) Causing tortious injury in this State or outside of this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from goods, food, services or manufactured products used or consumed in this State;

(5) Having an interest in, using, or possessing real property in this State; or

(6) Contracting to insure or act as surety for, or on, any person, property, or risk, contract, obligation, or agreement located, executed or to be performed within this State at the time of contracting, unless the parties otherwise provide in writing.

(b) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

If personal jurisdiction exists in the case at bar, it must be pursuant to either subsection (a)(1), (a)(3) or (a)(4). The appellant does not seriously push a theory based upon (a)(4). That subsection provides for personal jurisdiction in those cases where there has occurred "tortious injury in this State or outside of this State by an act or omission outside the

State" if the person over whom jurisdiction is sought "regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from goods, food, services or manufactured products used or consumed in this State." It was clear from the pleadings and supporting affidavits that the appellees did not regularly do business in Maryland, did not engage in any persistent course of conduct in Maryland and did not derive substantial income from products used or consumed in Maryland.

Nor do we think that personal jurisdiction over the appellees can be maintained on the basis of subsection (a)(1). That subsection provides for personal jurisdiction "as to a cause of action arising from the person's transacting any business in this State." We think initially that the appellant, in his declaration, failed to allege a single jurisdictional fact which would show that the appellees were "transacting any business in this State." We feel, moreover, that since subsections (a)(3) and (a)(4) provide specifically for the acquisition of personal jurisdiction in tort cases, that subsection (a)(1) is limited to actions in contract. See Auerbach, *supra*, at 34, n. 124:

> "Jurisdiction based on 'transaction of business' is technically broad enough to cover tort as well as contract cases. See Commissioners' Note to § 1.03 of Uniform Act. However, in view of the subsequent categories specifically dealing with tort actions, the typical case under this category is a contract action."

The appellant relies primarily on subsection (a)(3). That subsection consists of two distinct elements. There must be 1) "a tortious injury in this State" which is caused by 2) "an act or omission in this State." The appellees concede that the "tortious injury," if any, took place in Maryland. They strenuously assert, however, that the "act or omission," causing the tortious injury did not occur in Maryland. The causal act is separated from the resulting injury. Both elements must be present before personal jurisdiction will be inferred. We find persuasive the case of *Margoles v.*

*Johns,* 483 F. 2d 1212 (D.C. Cir. 1973). In that case, an allegedly defamatory phone call was placed from Wisconsin to Washington, D.C. The injury occurred in Washington. The District Court there dismissed the action under the District of Columbia's "Long Arm" Statute, because that statute "clearly separates the act from the tortious injury and affords personal jurisdiction over non-residents only when both act and injury occur in the District." 333 F. Supp. at 945. The District Court held that the "act" was committed in Wisconsin and that the "Long Arm" Statute, therefore, did not apply. The Court of Appeals affirmed the action of the District Court. At issue there was the same subsection (a)(3). The appellant there argued that the defendant "projected her presence" into the District by speaking over the telephone to someone in the District and, therefore, committed the "act" within the District. The Court of Appeals said, at 1217-1218:

> "We cannot accept such reasoning. Were we to develop any such 'presence' doctrine we would be thwarting the plain language and normal interpretation of the District's statute, and creating needless ambiguities which have no place in a statute as reasonably constructed as the Uniform Act.
>
> . . .
>
> The 'act,' of course, is the act of the alleged tortfeasor—here that act, uttering defamatory statements, occurred in Wisconsin. Nothing can change that fact. The additional facts that other third party acts were necessary to consummate the tort, or that the injury itself took place within the District, cannot under our reading of the Uniform Act grant jurisdiction that is otherwise lacking. Unless we wish to delve into a magical mystery tour of 'projecting presences,' we must find that no jurisdiction can be afforded by virtue of section (a)(3)."

The District of Columbia's "Long Arm" Statute was

"purposely" similar to Maryland's and the law there announced was "completely in accord with the currently prevailing case law in Maryland." 483 F. 2d at 1220.

A situation very similar to that at bar was dealt with in *St. Clair v. Righter*, 250 F. Supp. 148 (W.D. Va. 1966). There a libel action was instituted in a case wherein the defendants had mailed, from a point outside Virginia, allegedly libelous letters into the state. Virginia's "Long Arm" Statute is similar to that of both Maryland and the District of Columbia, all being based upon the Uniform Act. The District Court was there confronted with the precise question now before us of whether the "tortious injury" which occurred in Virginia had been as a result of "an act or omission" in Virginia. The court there held that the "Long Arm" Statute did not apply, saying, at 151:

> "In the instant case, the alleged tortious injury occurred upon the publication of the alleged libel within Virginia, but this was caused by the *act* of writing and mailing the letters *outside* Virginia. Plaintiff, therefore, must predicate jurisdiction upon paragraph (4), and this court must hold that the acts alleged in this case do not fall within the terms of the statute, as there is no evidence of any persistent course of conduct or derivation of revenue on the part of the defendants. The language used by the Virginia General Assembly must be interpreted with relation to the statute as a whole, and if the court were to hold that plaintiff could use paragraph (3) to obtain jurisdiction (a holding that the act occurred in Virginia), the necessity for paragraph (4) would be completely obviated, as every set of facts which give rise to tortious injury could be brought within the terms of paragraph (3). We would in effect be assimilating the Virginia statute to the single-act statutes of other states. Obviously, there is a purpose for paragraph (4) or the legislature would not have included it. Most probably, there was some concern over the constitutionality of single-act provisions,

and to 'enact' a single-act statute by judicial legislation would be to blatantly disregard the intent of the General Assembly. This, however, is what this court would be doing if it held that the act occurred inside Virginia upon the publication of the libel. Under such an interpretation the act and the injury would coincide and thus render the act a tortious one. It is believed that the legislature purposely omitted the adjective 'tortious' when referring to the act or omission and included it with reference to the resulting injury in order to make certain that a single-act interpretation would be precluded."

We hold that Judge Howard was correct in ruling that the provisions of the "Long Arm" Statute did not, under the circumstances of this case, confer *in personam* jurisdiction over the appellees.

*Judgment affirmed; costs to be paid by appellant.*