Barry **CRAIG**

v.

**GENERAL FINANCE CORPORATION OF ILLINOIS**

Civ. A. No. M–80–1753.

United States District Court,
D. Maryland.

Dec. 22, 1980.

As Amended Jan. 12, 1981.

Michael P. Darrow, Annapolis, Md., for plaintiff.

Robert L. Flanagan, and Joshua R. Treem, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Plaintiff filed this diversity action to recover damages allegedly resulting from defendant's communication with plaintiff's employer as to his unsatisfied indebtedness. Plaintiff's claim is founded upon *Md. Commercial Law Code Ann.* § 14–202(4). That section provides a cause of action in tort against a debt collector who "contact(s) a person's employer with respect to a delinquent indebtedness before obtaining a final judgment against the debtor." *See Cilento v. B. T. Credit Co., Inc.*, 424 F.Supp. 1 (D.Md.1977). Damages that are proximately caused by a violation of section 14–202(4) may be recovered pursuant to *Md. Commercial Law Code Ann.* § 14–203, including damages for emotional distress.

This case is before the court on defendant's motion to dismiss for lack of personal jurisdiction. Rule 12(b)(2), F.R.Civ.P. Since defendant has contested jurisdiction, the burden of proving sufficient jurisdictional facts rests with plaintiff. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 189, 56 S.Ct. 780, 782, 785, 80 L.Ed. 1135 (1936); *Malinow v. Eberly*, 322 F.Supp. 594, 600 (D.Md.1971).

### I. Factual Overview

Defendant is a Delaware corporation with its principal place of business in Waukegan, Illinois. Plaintiff is employed by the United States Naval Academy Band, and presently resides in Anne Arundel County, Maryland. In November of 1978, plaintiff, while residing in Illinois, filed a bankruptcy petition in the United States District Court for the Northern District of Illinois. Defendant was a general, unsecured creditor of plaintiff at the time the petition was filed.

In support of its dismissal motion, defendant has submitted the affidavit of George Lucas, defendant's general manager and the person responsible for plaintiff's credit account (Paper No. 4, attachment). According to the Lucas affidavit, plaintiff

visited defendant's Illinois office in December of 1978, seeking a new loan. During that visit plaintiff executed a note in the amount of $2,400, which included the amount of the new loan, his prior indebtedness, and finance charges. The Lucas affidavit also states the following: (1) defendant has never made any loans in Maryland; (2) defendant does not have and never has had a place of business or employees in Maryland; (3) all loans were made to plaintiff in Illinois and all loan negotiations occurred in Illinois; (4) in January of 1979, plaintiff advised defendant that he was moving to Maryland, and that after plaintiff moved to Maryland defendant's only dealings with plaintiff involved letters and telephone calls originating in Illinois; and (5) defendant's Maryland communications were for the purpose of obtaining payment of loans made in Illinois, and not to solicit new business.

In response to defendant's motion, plaintiff submitted the affidavit of Samuel J. Brown, an attorney he had retained to handle his debt problems (Paper No. 12), as well as his own affidavit (Paper No. 13). Plaintiff's affidavit alleges that he moved from Illinois to Maryland on January 15, 1979, and that in February of 1979, he began receiving telephone calls from defendant at his place of employment. Plaintiff further states that defendant called and sent letters to his employer concerning his indebtedness to defendant.

Attached to plaintiff's affidavit are copies of three undated letters, which defendant allegedly sent to plaintiff's commanding officer, and a copy of a letter dated December 7, 1979, addressed to a Baltimore credit bureau. Attached to the complaint is a copy of a letter dated February 12, 1980, from plaintiff's employer to defendant. Among other things, this letter informed defendant that it was a violation of Maryland law to contact a person's employer about a debt that had not been reduced to judgment.

Finally, plaintiff alleges that he had no contact with defendant in Illinois subsequent to his filing for bankruptcy in November of 1978. This allegation, coupled with a similar statement in Brown's affidavit, is apparently designed to support the inference that the debt reaffirmation was executed in Maryland.[1] Brown's affidavit also states that he received several telephone calls from defendant, that he informed defendant that he was an attorney handling debt matters for plaintiff, and that although defendant knew of his legal representation, defendant nevertheless contacted plaintiff's employer.

## II. Long Arm Jurisdiction

The Maryland long arm statute defines the circumstances under which Maryland courts may exercise personal jurisdiction over non-residents. It provides as follows:

"(a) Condition—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) In general—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

---

1. Plaintiff has not, however, submitted a copy of the loan reaffirmation in support of this inference.

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing."

*Md. Courts & Judicial Proceedings Code Ann.* § 6–103.

■ For the statute to apply it is sufficient if any of the provisions of subsection (b) are satisfied. *United Merchants & Mfrs., Inc. v. David & Dash, Inc.,* 439 F.Supp. 1078, 1082 (D.Md.1977); *Lawson v. Baltimore Paint & Chemical Corp.,* 298 F.Supp. 373, 377 (D.Md.1969). Application of the long arm statute is essentially a two-step process. The court must first determine whether a particular subsection purports to authorize service of process on the non-resident. Second, the court must determine whether that service and the attendant exercise of personal jurisdiction comports with due process. *See Haynes v. James H. Carr, Inc.,* 427 F.2d 700, 703 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970); *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976).

■ This court is bound by the decisions of the Court of Appeals of Maryland as to whether a particular subsection will reach certain conduct. *McLaughlin v. Copeland,* 435 F.Supp. 513, 522 (D.Md.1977); *Bennett v. Computers Intercontinental, Inc.,* 372 F.Supp. 1082, 1084 (D.Md.1974). *See Shealy v. Challenger Mfg. Co.,* 304 F.2d 102, 104 (4th Cir. 1962). Federal law is controlling, however, as to whether the exercise of personal jurisdiction violates due process. *United Merchants & Mfrs., Inc. v. David & Dash, Inc.,* 439 F.Supp. at 1801. The exercise of personal jurisdiction by this court over defendant, therefore, is subject ultimately to the constitutional limitations set forth by the Supreme Court in *Internation-*

*al Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.[2]

### A. Subsection (b)(3)

■ Maryland's long arm statute was modeled after the Uniform Interstate and International Procedures Act, 13 U.L.A. 285 (1975 Master Edition). *Carter v. Massey,* 436 F.Supp. 29, 32 (D.Md.1977); *Malinow v. Eberly,* 322 F.Supp. at 598. Not all subsections of the Maryland statute, however, are coterminous with due process. As Judge Soboloff explained in *Beaty v. M. S. Steel Co.,* 401 F.2d 157 (4th Cir. 1968), *cert. denied,* 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969), those parts of Maryland's long arm statute that have been codified as subsections (b)(3) and (b)(4) were intended by the legislature to be more restrictive than the broad single act, tortious injury type of statute construed in *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). This was accomplished by separating the elements of "act" and "injury", and requiring either (1) that both the act and the injury occur in Maryland, or (2) that if only the injury occurred in Maryland, the non-resident have some other significant contacts with Maryland. *Beaty v. M. S. Steel Co.,* 401 F.2d at 159–60. *See Piracci v. New York City Employees' Retirement System,* 321 F.Supp. 1067, 1070 (D.Md.1971); *Geelhoed v. Jensen,* 277 Md. at 223–24 n.3, 352 A.2d 818. *See also Krashes v. White,* 275 Md. 549, 559, 341 A.2d 798 (1975).

Plaintiff contends that personal jurisdiction over defendant may be exercised pursuant to subsection (b)(3). For that subsection to apply there must be (1) a tortious injury in Maryland that was (2) caused by an act or omission in Maryland. *McLaughlin v. Copeland,* 435 F.Supp. at 525. That the tortious injury, if any, occurred in

---

**2.** *See, e. g., Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683

(1977); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See generally* Louis, the Grasp of Long Arm Jurisdiction Finally Exceeds Its Reach: A Comment on *World-Wide Volkswagen Corp. v. Woodson* and *Rush v. Savchuk,* 58 N.C.L.Rev. 407 (1980).

Maryland is not disputed. The parties differ, however, as to whether defendant committed an *act* in Maryland within the meaning of subsection (b)(3).

Defendant maintains that under *Zinz v. Evans & Mitchell Industries*, 22 Md.App. 126, 324 A.2d 140 *cert. denied*, 272 Md. 751 (1974), the mailing of letters and the making of telephone calls from Illinois does not constitute an act in Maryland under subsection (b)(3). The issue in *Zinz*, a defamation action, was whether the defendant's mailing of a letter from Georgia to a person residing in Maryland constituted an act in Maryland. Relying upon Judge Tamm's opinion construing the District of Columbia's long arm statute,[3] *Margoles v. Johns*, 483 F.2d 1212 (D.C.Cir.1973), the Court of Special Appeals held that the causal act did not occur in Maryland. 22 Md.App. at 130–131, 324 A.2d 140.

Although the Court of Appeals of Maryland has yet to address this precise issue, courts of this District have followed *Zinz* on this point. *See United Merchants & Mfrs. Inc. v. David & Dash, Inc.*, 439 F.Supp. at 1082–83; *McLaughlin v. Copeland*, 435 F.Supp. at 525. This court too is persuaded that the reasoning of *Zinz*, and *Margoles* the case upon which *Zinz* relied, is sound. *Accord, Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930–31 (6th Cir. 1974).

Plaintiff attempts to distinguish *Zinz* by arguing that because defendant's conduct became tortious only when plaintiff's employer received the communication, the causal act occurred in Maryland. Additionally, plaintiff asserts that *Zinz* is distinguishable, because contrary to the *Zinz* factual setting, here plaintiff's cause of action is statutory, rather than a common law claim.

■ The fact that plaintiff's cause of action is statutory is irrelevant to the issue of whether defendant committed an act in Maryland under subsection (b)(3). Simply because no cause of action arises under the statute involved here until the employer

receives the communication, *Md. Commercial Law Code Ann.* § 14–202(4), does not mean that the causal act occurred in Maryland. In the comparable situation of defamation such as was alleged in *Zinz*, no claim arises until the defamation is published to a third party. *E. g., Geraghty v. Suburban Trust Co.*, 238 Md. 197, 202, 208 A.2d 606 (1965); *Fletcher v. High's Dairy Products*, 22 Md.App. 71, 75, 321 A.2d 821 (1974). It was not disputed in *Zinz* that the alleged defamation was in fact published in Maryland. 22 Md.App. at 127–28, 324 A.2d 140. Thus, while a debtor may have no cause of action until there is a "publication" to his employer, it does not follow that the causal act occurred in the same forum as the "publication." Since all causal acts responsible for the alleged tort occurred outside of Maryland, this court may not exercise personal jurisdiction over defendant pursuant to subsection (b)(3).

## B. Other Jurisdictional Bases

Although not expressly urged to do so by plaintiff, the court has also considered whether personal jurisdiction over defendant exists under either subsection (b)(1) or subsection (b)(4).

■ As noted earlier, the reach of subsection (b)(4) does not extend to the limits of the due process clause. It would be anomalous to hold that while defendant has committed no act in Maryland within the meaning of subsection (b)(3), it has engaged in a persistent course of conduct within the meaning of subsection (b)(4). Further, it is undisputed that defendant neither regularly does business in Maryland nor derives substantial revenue from services performed in this state. *See Lewron Television, Inc. v. International Alliance of Theatrical Stage Employees & Moving Picture Machine Operators*, 37 Md.App. 662, 669–74, 378 A.2d 728 (1977). *See also Gatewood v. Fiat, S.p.A.*, 617 F.2d 820 (D.C.Cir.1980). Therefore, it would be improper to exercise jurisdiction under subsection (b)(4).

**3.** The District of Columbia's long arm statute is also modeled after the Uniform Interstate and International Procedures Act. *See Margoles v. Johns*, 483 F.2d at 1216–17.

**1038**

■ The final basis of jurisdiction arguably applicable to this case is subsection (b)(1). It is beyond doubt that this part of the long arm statute does allow the exercise of personal jurisdiction to the extent permitted by the Due Process Clause, and in *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551 (1977), the Court of Appeals of Maryland did hold that the "transacting business" test of subsection (b)(1) could form the basis of personal jurisdiction in a tort suit.[4] However, this court does not read *Mohamed* as sanctioning the exercise of personal jurisdiction over this defendant under subsection (b)(1).

Writing for the Court of Appeals, Judge Eldridge held in *Mohamed* that "the alleged activities of Michael's *agents within the State* constituted such 'purposeful activity' within the State as to be a transaction of business within the meaning of subsection (b)(1)." 279 Md. at 659, 370 A.2d 551 (emphasis supplied). Significantly, in all of the cases relied upon by Judge Eldridge in support of this holding the defendant, either personally or through an agent, had actually entered the forum and had engaged in activities in furtherance of the defendant's business. *See Harris v. Arlen Properties*, 256 Md. 185, 197, 260 A.2d 22 (1969); *Novack v. National Hot Rod Association*, 247 Md. 350, 356–57, 231 A.2d 22 (1967); *Van Wagenberg v. Van Wagenberg*, 241 Md. 154, 175–76, 215 A.2d 812 *cert. denied*, 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966). The result in *Mohamed*, therefore, is consistent with that reached by other courts construing "transacting business" where the defendant had either conducted significant negotiations in the forum, *see, e. g.*, *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1193–95 (7th Cir. 1980); *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1232–33 (4th Cir. 1976), or had intentionally advertised and sold products in the forum. See, *e. g.*, *Hardy v. Pioneer Parachute Co., Inc.*, 531 F.2d 193, 195 (4th Cir. 1976).

■ In the instant case it is undisputed that defendant has never had an agent in Maryland in connection with plaintiff's indebtedness. Defendant's only contacts with the state consist of various telephone calls and letters originating from Illinois. The better view holds that such contacts, without more, do not equal transacting business, even when the long arm statute at issue had been declared to reach the outer bounds of due process. *See, e. g., Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730, 735–36 (2d Cir. 1980); *Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1210 (8th Cir. 1977); *Barron & Co., Inc. v. Bank of New Jersey*, 497 F.Supp. 534, 538–39 (E.D.Pa.1980). *Cf. Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 195–197 (1st Cir. 1980) (mailing of patent infringement notice constituted sufficient transaction of business where defendant had other business related contacts with the forum).

Even assuming that defendant's conduct could be held to constitute "transacting business" under subsection (b)(1), this court's exercise of jurisdiction over defendant would contravene due process.

In determining whether an exercise of personal jurisdiction comports with due process, the court's inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. at 204, 97 S.Ct. at 2579. While the Maryland legislature has certainly expressed an interest in protecting its residents from the type of conduct at issue here, *compare McGee v. International Life Insurance Co.*, 355 U.S. 220, 223–24, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) with *Shaffer v. Heitner*, 433 U.S. at 214–16, 97 S.Ct. at 2584, this factor comes into play only after a defendant is found to have the requisite *minimum contacts with the forum*. *See Rush v. Savchuk*, 444 U.S. at 332, 100 S.Ct. at 579; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 294, 100 S.Ct. at 565.

---

4. As several courts of this District have noted, *see, e. g., United Merchants & Mfrs., Inc. v. David & Dash, Inc.*, 439 F.Supp. at 1083; *McLaughlin v. Copeland*, 435 F.Supp. at 523 n.2, the *Mohamed* court did not even mention the contrary holding of *Zinz* on this point. *See* 22 Md.App. at 130, 324 A.2d 140.

All significant aspects of plaintiff's alleged indebtedness to defendant relate to Illinois, and not to Maryland. Until plaintiff moved to Maryland, defendant had no significant contacts with this state. Plaintiff's decision to move to Maryland was "completely adventitious" as far as defendant is concerned. *See Rush v. Savchuk*, 444 U.S. at 328–29, 100 S.Ct. at 577. Simply because defendant attempted to collect on a debt, originating in Illinois, through the interstate mail and telephone systems, it cannot be said that defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239.

Although it was certainly "foreseeable" that defendant's communications would enter Maryland and reach plaintiff's employer, this fact alone is insufficient to permit the exercise of personal jurisdiction over defendant in this state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 295, 100 S.Ct. at 566. Since plaintiff has failed to demonstrate "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567, defendant's motion to dismiss must be granted.

Accordingly, it is this 22nd day of December, 1980, by the United States District Court for the District of Maryland, *ORDERED*:

Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.