**BUTLER & CO., INC., Plaintiff,**

v.

**Elzy Forest CALDWELL and Florence Caldwell, Defendants.**

**Civ. A. No. HAR 83–1660.**

United States District Court, D. Maryland.

Nov. 23, 1984.

Melvyn J. Weinstock, Weinberger & Weinstock, Sidney S. Friedman, Baltimore, Md., for plaintiff.

Jonathan E. Clairborne, Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for defendants.

MEMORANDUM OPINION

HARGROVE, District Judge.

Before the Court is Defendants' Motion to Dismiss the Complaint, filed July 21, 1983. Plaintiff's Opposition was filed on August 4, 1983 and Defendants' Reply on August 15, 1983.

Plaintiff's claim against Defendants involves the collection of monies due and payable to Plaintiff, in the amount of $23,-400.00, for unpaid rent on a refrigerated trailer leased to Defendants. The Plaintiff Corporation is a resident of the State of Maryland, its principal place of business located in Howard County, Maryland. Elzy Forest Caldwell and Florence Caldwell are residents of Waynesville, North Carolina. Plaintiffs have alleged an amount in controversy in excess of $10,000.00. On July 6, 1982 Plaintiff and Mr. Caldwell entered into an Equipment Lease Agreement setting forth the terms and conditions of the rental of the trailer. The lease was executed in North Carolina. It contains a clause at part 17 that it "... has been delivered in the State of Maryland and shall in all respects be governed by and construed in accordance with the laws of the State of Maryland."

On the same date, both Mr. and Mrs. Caldwell signed a guaranty agreement, assuring that all sums due on the lease would be paid. The guaranty authorizes,

> any attorney at law to appear for them before any court having jurisdiction within the United States or elsewhere, and after one or more declarations filed, confess judgment against them as of any term after the Liabilities are due (whether by normal maturity or upon acceleration) for the unpaid balance of the Liabilities declared due, and interest....

It also provides that its interpretation should be governed by Maryland law.

Plaintiff contends that these clauses give the courts of Maryland jurisdiction over the Defendants in this dispute pursuant to the Maryland Longarm Statute at Md. Courts and Judicial Proceedings Code Ann. § 6–103(b)(1) (1957). Defendants have filed a motion to dismiss and a reply stating that this Court does not have personal jurisdiction over them because they are residents of North Carolina, and, because they do not and have never had any contacts with the State of Maryland.

Plaintiff, in its opposition, states that the aforementioned clauses in the lease and guaranty agreements, providing that said agreements were delivered in Maryland and would be construed according to Maryland law in connection with the confessed judgment phrase in the guaranty agreement, give this Court jurisdiction over the defendants.

> For the [Maryland Longarm] statute to apply it is sufficient if any of the provisions of subsection (b) are satisfied. *United Merchants & Mfrs., Inc. v. David & Dash, Inc.,* 439 F.Supp. 1078, 1082 (D.Md.1977); *Lawson v. Baltimore Paint & Chemical Corp.,* 298 F.Supp. 373, 377 (D.Md.1969). Application of the long arm statute is essentially a two-step process. The court must first determine whether a particular subsection purports to authorize service of process on the non-resident. Second, the court must determine whether that service and the attendant exercise of personal jurisdiction comports with due process. *See Haynes v. James H. Carr, Inc.,* 427 F.2d 700, 703 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970); *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976).

*Craig v. General Finance Corp. of Illinois,* 504 F.Supp. 1033, 1036 (D.Md.1980).

With respect to Step 1, § 6–103(b)(1) of the Courts and Judicial Proceedings article of the Maryland Code states:

> (a) *Condition*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> (b) *In general*—A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services or manufactured products or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Defendants do not fall into any of the 6 possible categories of persons over whom Maryland courts have jurisdiction pursuant to this statute. Plaintiffs have not articulated what acts Defendants have committed which rise to any level of the "transacting business" requirement of § 6–103(b)(1).

With respect to step 2 of the longarm statute application process, federal law is controlling concerning the question of whether the exercise of personal jurisdiction violates due process. *United Merchants & Mfrs., Inc. v. David & Dash, Inc., supra* at 1801. Such exercise of personal jurisdiction is, therefore, subject ultimately to the constitutional limitations set forth by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *Craig v. General Finance Corp. of Illinois, supra.*

The Supreme Court in *International Shoe* stated that

... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

326 U.S. at 319, 66 S.Ct. at 160.

■ The Lease and Guaranty Agreements were executed in North Carolina. No mention has been made of any negotiations having taken place in Maryland, or through the mails or via telephone, to Maryland. No proof is shown that the parties had travelled to Maryland or that the trailer had ever been used in Maryland.

[M]erely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum State. *See Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1211 (8th Cir.1977). This is particularly true when all elements of the defendant's performance are to take place outside the forum. *Id.* at 1210. *See also Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288 (5th Cir.1978); *American Steel, Inc. v. Cascade Steel Rolling Mills, Inc.*, 425 F.Supp. 301, 303 (S.D.Tex.1975), *aff'd.*, 548 F.2d 620 (5th Cir.1977).

*Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301 (8th Cir.1979) (footnotes omitted).

Even if such communications had been made, the Courts have found that the "minimum contacts" standard articulated in *International Shoe* requires more. *See Thomas P. Gonzalez Corporation v. Consejo Nacional De Produccion de Costa Rica*, 614 F.2d 1247 (9th Cir.1980) (fact that defendant regularly entered into sale and purchase agreements with plaintiff, a California resident, for purchases of grain, made payment in California by confirmed letters of credit, and frequently contacted plaintiff, did not subject defendant to long-arm jurisdiction in California with respect to a dispute arising out of one of the agreements. Court held that defendant had not performed any act relating to the contract at issue by which it purposefully availed itself of the privilege of conducting business in California); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir.1979) (Acts of out-of-state defendant in ordering goods from plaintiff, a Wisconsin Company, with knowledge that they were likely to be manufactured in Wisconsin and shipped from there and in using mail and telephone to communicate with plaintiff in Wisconsin during negotiation and performance of contract were insufficient, even with alleged acceptance of purchase order in Wisconsin, to satisfy due process "minimum contacts" test for asserting personal jurisdiction over out-of-state defendant in diversity contract action brought in Wisconsin where, though defendant in a sense caused activity in Wisconsin by placing order, contract between parties left plaintiff in absolute control over where it would conduct that activity, and defendant did not purposefully avail itself of privilege of conducting activities within forum State.)

In the instant case, the clause designating Maryland law as the appropriate law governing the interpretation of both the lease agreement and the guaranty agreement was a choice of law provision, not a provision indicating that the parties had consented to the jurisdiction of the courts of the State of Maryland. The defendants did not, thereby, avail themselves of the privilege of coordinating activities in Maryland, as *International Shoe, supra*, requires. Further, the consent judgment clause is triggered *only* when the court in which the judgment is to be rendered has jurisdiction over the defendants. Not only must the court have subject matter jurisdiction but it must also have personal jurisdiction over the defendants. It has not been shown that such personal jurisdiction exists here. The court may have found personal jurisdiction over defendants if they had actually consented to the jurisdiction of the Maryland courts. *See G.H. Miller & Co. v. Hanes*, 566 F.Supp. 305 (N.D.Ill.1983).

If it does have personal and subject matter jurisdiction, then, venue determinations may be made and, then, a decision as to choice of law may be rendered. None of the cases which the parties have cited truly clarifies the distinction between personal jurisdiction and choice of law.

In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), it was urged that, because the settlor and most of the appointees and beneficiaries of a revocable deed of trust made in Delaware were domiciled in Florida, and, because the settlor executed in Florida the power of attorney, that the State courts of Florida should have been able to have exercised personal jurisdiction over the nonresident trustees. The Court held that, under Florida law,

the trustee is an indispensable party over whom the court must acquire jurisdiction before it is empowered to enter judgment in a proceeding affecting the validity of a trust. It does not acquire that jurisdiction by being the "center of gravity" of the controversy, or the most convenient location for litigation. The issue is jurisdiction not choice for law.

*Id.* at 254, 78 S.Ct. at 1240. This clearly separates the question of personal jurisdiction from that of choice of law.

Accordingly, Plaintiffs have not articulated sufficient acts committed by Defendants which would allow this Court to exercise jurisdiction over the Defendants without violating the standard of "traditional motions of fair play and substantial justice", as articulated by the Supreme Court in *International Shoe, supra.*

The complaint is, therefore, dismissed as to both defendants for lack of personal jurisdiction. The Court will enter a separate order.