822 F.2d 55
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Alyza D. LEWIN, Plaintiff-Appellant,
v.
COLUMBIA UNIVERSITY IN the CITY OF NEW YORK, James T.
McMenamin, Columbia University and Mark L.
Goldstein, Columbia University,
Defendants-Appellees.
 No. 86-1191.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 3, 1987.
Decided June 19, 1987.
 
 Before RUSSELL and ERVIN, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 Randall James Turk (Nathan Lewin; Miller, Cassidy, Larroca & Lewin, on brief), for appellant.
 Henry R. Abrams (Theodore Sherbow; Judith C. Levinson; Weinberg & Green, on brief), for appellees.
 PER CURIAM:
 
 
 1
 Two questions are raised on this appeal. First, did the district court err in holding that personal jurisdiction could not be asserted over defendants/appellees? Second, if there was no error, should this case be remanded to enable plaintiff-appellant to move for transfer of this action to the appropriate district? We answer both questions in the negative.
 
 BACKGROUND
 
 2
 Plaintiff-appellant Alyza D. Lewin (Lewin) graduated from a Maryland high school in 1983. Prior to her graduation, she had been accepted for admission at Princeton University (Princeton) and defendant/appellee Columbia University (Columbia). However, she asked both schools for a one-year deferral in her enrollment so that she could study and travel in Israel. Both agreed, evidently unaware that the other institution had agreed to the same action.
 
 
 3
 In January 1984, Lewin decided that, beginning that fall, she would attend Princeton. Her father wrote to Columbia, informing it that she had "made other plans." The record indicates that in early April a Columbia representative telephoned Lewin's home to ask about her plans. Lewin's mother told the caller that Lewin would attend Princeton. Thereafter, by letter dated April 12, 1984, defendant-appellee James T. McMenamin (McMenamin), Columbia's Director of Admissions, wrote Lewin to state that she had not lived up to her agreement with Columbia, and had possibly hurt the chances of other candidates who wished to attend Columbia. McMenamin further expressed the hope that Lewin would conduct her personal affairs in a more straightforward fashion in the future. Copies of the letter, which was authored by McMenamin in New York, were sent to Princeton and Lewin's high school.
 
 
 4
 Lewin's father sent a seven-page response to McMenamin. He stated that Lewin had no agreement with Columbia, that her reputation had been hurt by dissemination of the April 12 letter, and that her chances of eventually becoming a lawyer may have been damaged. Lewin's father indicated that legal proceedings seeking compensation for defamation and intentional infliction of emotional distress would be instituted.
 
 
 5
 Defendant-appellee Mark L. Goldstein (Goldstein), Columbia's Associate General Counsel, replied to the letter by Lewin's father. Goldstein stated that Columbia, along with the great majority of colleges, subscribes to the College Board's Candidates' Reply Date, whereby May 1 is established as the date at which candidates must accept the offer of admission from the one college at which they intend to enroll. Thus, Lewin should have informed either Columbia or Princeton, but not both, of her acceptance by May 1, 1983. Thereafter, a one-year deferral should have been sought from that one school. Copies of this letter were also forwarded to Princeton and Lewin's high school.
 
 
 6
 Lewin filed a complaint in federal court in Maryland. She named Columbia, McMenamin, and Goldstein as defendants. She presented two claims. The first was a defamation claim in which she said both McMenamin's and Goldstein's letters defamed her. The second was an intentional infliction of mental distress claim. She sought $5,500,000 in compensatory damages, and $5,000,000 in punitive damages.
 
 
 7
 Defendant-appellees moved to dismiss, arguing that the court lacked personal jurisdiction over them. The court held a hearing on this motion, and in an oral opinion, granted the motion.
 
 THE MARYLAND LONG-ARM STATUTE
 
 8
 Maryland's Long Arm Statute reads in pertinent part as follows:
 
 
 9
 (a) Condition.--If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
 
 
 10
 (b) In general.--A court may exercise personal jurisdiction over a person, who directly or by an agent:
 
 
 11
 (1) Transacts any business or performs any character of work or service in the State;
 
 
 12
 * * *
 
 
 13
 (3) Causes tortious injury in the State by an act or omission in the State;
 
 
 14
 (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State ...
 
 
 15
 Md.Cts. & Jud.Proc.Code Ann. Sec. 6-103.
 
 
 16
 Lewin argues that jurisdiction over Columbia and McMenamin is proper under subsections (b)(1), (b)(3), and (b)(4). Jurisdiction over Goldstein is advanced only under subsection (b)(3).
 
 JURISDICTION OVER COLUMBIA
 Subsection (b)(1)
 
 17
 Lewin did not present a (b)(1) argument in district court. Therefore, she cannot raise the question for the first time at the appellate level. As we have previously noted, in the absence of exceptional circumstances, questions not raised at the district court will not be noticed on appeal. United States v. One 1971 Mercedes Benz 2-Door Coupe, Serial No. 11304412023280, 540 F.2d 912, 915 (4th Cir.1976). In any event, although (b)(1) is generally applicable to tort actions, see McLaughlin v. Copeland, 435 F.Supp. 513, 523-24 (D.Md.1977), it does not follow, as Lewin seemingly suggests, that jurisdiction over the defendant is automatic in such cases.
 
 Subsection (b)(3)
 
 18
 The situation in the instant action is strikingly similar to that presented to the Court of Special Appeals of Maryland in Zinz v. Evans and Mitchell Industries, 22 Md.App. 126, 324 A.2d 140, cert. denied, 272 Md. 751 (1974). There, appellees, Georgia citizens, were sued for libel by a Maryland citizen. The alleged libel concerned a letter which was written in Georgia and mailed from Georgia, but received in Maryland. Copies of the letter were also sent to several others in Maryland. Id. at 128, 324 A.2d at 143. Relying on the same subsection of the long-arm statute that is now under consideration, the Maryland court found that no "act or omission" occurred within Maryland which might cause tortious injury there. Id. at 131, 324 A.2d at 144. Rather, the "act" took place in Georgia, thus negating any exercise of personal jurisdiction over the appellees.
 
 
 19
 Lewin argues that Zinz is no longer good law in light of the pronouncements contained in Mohammed v. Michael, 279 Md. 653, 370 A.2d 551 (1977), and Calder v. Jones, 465 U.S. 783 (1984). We disagree.
 
 
 20
 It is true that Zinz and Mohammed are inconsistent to a degree. "The holding in Mohammed is entirely incompatible with the position announced in Zinz." United Merchants and Manufacturers, Inc. v. David & Dash, Inc., 439 F.Supp. 1078, 1083 (D.Md.1977). Lewin reads too much into this statement, however. The incompatibility deals with the scope of (b)(1) and its application to tort actions. Any (b)(3) analysis is not affected by the recognized inconsistency between the two cases.
 
 
 21
 In yet another vein, Lewin notes that Mohammed contains the following language: "[I]t was the intent of the Legislature in enacting the [Maryland] long-arm statute to expand the personal jurisdiction of the courts to the extent permitted by the Fourteenth Amendment." Mohammed, 279 Md.App. at 657, 370 A.2d at 553. Extrapolating from this statement, Lewin argues that due process considerations would not bar an assertion of jurisdiction over Columbia, therefore, the long arm statute was improperly used to block jurisdiction.
 
 
 22
 On its face, this argument may demand some consideration. However, a review of the development of and court rulings concerning the statute reveal a different story. It is true that "the [Maryland] long arm statute represents an effort by the Legislature to expand the boundaries of permissible in personam jurisdiction to the limits permitted by the Federal Constitution." Geelhoed v. Jensen, 277 Md. 220, 224, 352 A.2d 818, 821 (1976). The Geelhoed court cautioned, however:
 
 
 23
 Subsection (b)(3) and (b)(4) of the Maryland long arm statute distinguish between the tortious act and injury, and in a sense are therefore more restrictive than long arm statutes like Ill.Stat.Ann. c. 110, Sec. 17(1)(b) which provides jurisdiction as to any cause of action arising from the "commission of a tortious act within this State." See Uniform Interstate and International Procedure Act, Sec. 1.03, Commissioner's Comment, 13 U.L.A. 285-86 (1975).
 
 
 24
 Geelhoed, 277 Md. at 224, 352 A.2d at 821 n. 3.
 
 
 25
 As a result, in order to assert jurisdiction under (b)(3), a court must find that the act and the injury occurred in Maryland. This interpretation has been reemphasized since Mohammed. See, e.g., Craig v. General Finance Corp. of Illinois, 504 F.Supp. 1033, 1036 (D.Md.1981); McLaughlin v. Copeland, 435 F.Supp. 513, 525 (D.Md.1977). In the instant case, as in Zinz, it must be conceded that the injury, assuming any, took place in Maryland. Zinz controls, however, in arriving at the conclusion that the acts of alleged defamation occurred in New York.
 
 
 26
 Neither do we find Lewin's Calder v. Jones argument persuasive. There, a National Enquirer article was written and edited in Florida. Plaintiff-appellee, who was the focus of the article, felt its effects in California, and brought suit there against the article's author and editor, alleging libel. The Supreme Court held that jurisdiction over the defendants-appellants was proper in California "based on the 'effects' of their Florida conduct in California." Calder, 465 U.S. at 789. However, the Court noted that California's Code of Civil Procedure provided: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Id. at 786 n. 5 (quoting Cal.Civ.P.Code Ann. Sec. 410.10 (West 1973)). As we have already noted, subsection (b)(3) of the Maryland long arm statute is not equally as expansive.
 
 Subsection (b)(4)
 
 27
 A separate analysis is required for consideration of jurisdiction under (b)(4). The Maryland District Court has written:
 
 
 28
 If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be fairly extensive before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.' "
 
 
 29
 McLaughlin v. Copeland, 435 F.Supp. 513, 527 (D.Md.1977) (quoting Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 748 (4th Cir.), cert. denied, 404 U.S. 948 (1971)) (emphasis in original). To be sure, any assertion of jurisdiction must meet the minimum contacts principles first enunciated in International Shoe Company v. Washington, 326 U.S. 310, 316 (1945).
 
 
 30
 There are three ways by which jurisdiction may be proper under (b)(4): If the actor (1) "regularly does or solicits business," (2) "engages in any other persistent course of conduct in the State," or (3) "derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md.Cts. & Jud.Proc.Code Ann. Sec. 6-103. It is obvious that the latter has no bearing on this case.
 
 
 31
 In reference to the other clauses, Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539 (3d Cir.1985), is instructive. There, the son of the plaintiffs (Pennsylvania citizens) attended the defendant school in Grenada. After participating in a school road race, the son collapsed and died. Plaintiffs brought suit in district court in Pennsylvania, asserting, among other things, that defendants were liable for certain non-forum activities. As such, the courts were forced to look to the contacts which the defendants maintained in and with Pennsylvania. Those contacts were found to be as follows: (1) newspaper advertisements circulated in Pennsylvania, (2) six percent of the medical school's student body originated from Pennsylvania, (3) the school's Chancellor and Vice-Chancellor had recently toured Philadelphia to "gain exposure", and (4) a joint international program had been established between St. George's and Waynesburg College in Pennsylvania. Id. at 541-42.
 
 
 32
 The district court and the Third Circuit found that defendants did not have sufficient contacts with Pennsylvania to allow for jurisdiction in the case of claims arising from non-forum activities. Id. at 542. The Third Circuit also commented: "Advanced educational institutions typically draw their student body from numerous states, and appellant's theory would subject them to suit on non-forum related claims in every state where a member of the student body resides." Id.
 
 
 33
 In the instant case, Columbia has students from Maryland and accepts applications from Maryland residents. Admissions officers visit Maryland high schools, allegedly upon invitation. Furthermore, a Columbia alumni magazine is circulated in Maryland, and fund raising letters are sent into the state. Finally, an alumni club, independent of the University, exists in Maryland.
 
 
 34
 These contacts, however, do not amount to a regular doing of business or a persistent course of conduct. To force Columbia to defend itself in Maryland would be to ignore the language of (b)(4) and to disregard the dictates of International Shoe and its progeny.
 
 JURISDICTION OVER THE INDIVIDUAL DEFENDANTS
 
 35
 We are convinced that the fiduciary shield doctrine bars the exercise of personal jurisdiction over McMenamin and Goldstein. We discussed this doctrine in depth in Columbia Briargate Co. v. First National Bank in Dallas, 713 F.2d 1052 (4th Cir.1983), cert. denied, 465 U.S. 1007 (1984), noting a distinction between torts committed by agents in the forum state and those committed outside of the forum.
 
 
 36
 If the agent has never been in the forum state and has had no "causal connection" with the alleged tort and has no reason to foresee being made amenable to suit therein, it would be unfair to require him to come to such state to defend a tortious act not participated in by him in that state....
 
 
 37
 Id. at 1061.
 
 
 38
 It is clear that in writing the letters in question, McMenamin and Goldstein were acting as agents of Columbia. Lewin argues that the use of the fiduciary shield doctrine is improper here because McMenamin and Goldstein had "direct personal involvement" in the commission of the alleged torts. See id. at 1064. We cannot agree. McMenamin's letter was written in his capacity as Columbia's Director of Admissions. Goldstein's letter was written in his capacity as Columbia's Associate General Counsel. "The acts of a corporate representative, transacting corporate business, are not a basis for the exercise of personal jurisdiction over the corporate representative in his individual capacity." Sibert v. Flint, 564 F.Supp. 1524, 1529 (D.Md.1983). See also Umans v. PWP Services, Inc., 50 Md.App. 414, 420, 439 A.2d 21, 25 (1982).
 
 REMAND AND TRANSFER
 
 39
 Lewin suggests, in the event we find no error in the district court's decision, that we remand the action to allow her an opportunity to move the district court for transfer under 28 U.S.C. Sec. 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").
 
 
 40
 We will not require the district court to entertain a fruitless motion. It is abundantly clear that the "interest of justice" requires dismissal, not transfer, of this action. In this case Lewin has admitted that she informed two prestigious universities that she was accepting a highly coveted place in their respective student bodies. She did this knowing full well that she could not simultaneously attend both universities. And yet when Columbia complained about her actions she was offended to the point of filing a suit in federal court. We sense misplaced priorities in these events. A good reputation is earned by a consistent fidelity to that which is right and just. To remand this case would be to offer encouragement to members of the bar, and would-be members of the bar, such as Lewin, who display a disturbing and growing tendency to rush to the courthouse when faced with the slightest adversity. Such activity we do not countenance.
 
 
 41
 Lewin's suggestion is rejected.
 
 
 42
 AFFIRMED.