768 A.2d 719

**CHRISTIAN BOOK DISTRIBUTORS, INC.**

**v.**

**GREAT CHRISTIAN BOOKS, INC., et al.**

**No. 847, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 8, 2001.

368

Robert B. Carpenter (Schnader, Harrison, Goldstein & Manello, Boston, MA, John R. Wellschlager and Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, on the brief), for appellant.

William F. Riddle, Elkton, for appellees.

Argued before MURPHY, C.J., and EYLER and ADKINS, JJ.

EYLER, Judge.

The question presented by this appeal is whether the Circuit Court for Cecil County erred in vacating a judgment filed in that court pursuant to the Uniform Enforcement of Foreign Judgments Act, Md.Code (1998 Repl.Vol., 2000 Supp.), Cts. & Jud. Proc. § 11–801 et seq., on the ground that the Massachusetts court that entered the judgment lacked

jurisdiction over the person of the defendant. We answer the question in the negative, and consequently, affirm the judgment of the circuit court. In doing so, we shall revisit what is commonly called the fiduciary shield doctrine [1] and overrule our holding in *Umans v. PWP Serv., Inc.* 50 Md.App. 414, 439 A.2d 21 (1982).

## Factual Background

Christian Book Distributors, Inc., appellant, is in the business of selling religious books by mail. Great Christian Books, Inc. (GCB) was in the same business and was a competitor of appellant. In March, 1998,[2] appellant commenced negotiations with GCB, the latter acting through William Wallace, appellee, regarding the possible purchase by appellant of GCB's customer list. On July 10, 1998, GCB sold, and appellant purchased, GCB's customer list.

On December 2, 1998, appellant filed a complaint in Superior Court in Massachusetts against GCB, William Wallace, and other defendants whose identities are not relevant to this appeal. In addition to the information in the preceding paragraph, appellant alleged that GCB and William Wallace (hereinafter appellee) faxed the closing documents to appellant in Massachusetts, that the documents contained misrepresentations of fact on which appellant relied, and that appellant and GCB continued to use the list after settlement. The complaint contained four counts: (1) breach of agreement, (2) conversion, (3) misrepresentation, and (4) an action under the Massachusetts business regulation & consumer protection act. Mass. Ann. Laws ch. 93A, §§ 2 and 11 (1994 Repl.Vol.).

---

**1.** Simply stated, the fiduciary shield doctrine does not permit a state to exercise jurisdiction over a nonresident individual when the individual's actions that could provide a basis for jurisdiction were taken on behalf of a corporation, and not on the individual's own behalf. *See Cawley v. Bloch,* 544 F.Supp. 133, 135 (D.Md.1982).

**2.** There are references elsewhere in the record to May. Whether it was March or May is not material to the issues before us.

With respect to jurisdiction, appellant alleged in the complaint that (1) it was a Massachusetts corporation with a place of business in Massachusetts; (2) GCB was a Delaware corporation with a place of business in Maryland; and (3) appellee was a resident of Maryland. Appellant alleged that the court had personal jurisdiction over the defendants under Mass. Ann. Laws ch. 223A, § 3, the Massachusetts long-arm statute, because the defendants transacted business or caused tortious injury within Massachusetts.

The complaint contained exhibits consisting of an affidavit dated December 2, 1998, by Steven J. Henderson, President of appellant, and the closing documents. The latter consisted of (1) the asset purchase agreement, (2) the bill of sale, (3) a "certificate" by GCB with respect to the warranties and representations described in Paragraph 7 of the asset purchase agreement, and (4) a letter from GCB's secured lender, releasing its lien on the customer list. According to the documents, appellee executed the asset purchase agreement on behalf of GCB as a duly authorized agent and executed the bill of sale and certificate as president of GCB. The asset purchase agreement and the certificate contained representations and warranties by GCB that it had good and marketable title to the customer list, that the quantity and quality of the list was as specified, and that recent transactions with the customer list were as specified. Appellant sought damages and injunctive relief.

On December 2, 1998, the same day that the complaint was filed, the Superior Court issued a temporary restraining order directed to the defendants. According to a return of private process server, on December 9, 1998, appellee was served with the complaint, the temporary restraining order, and other pleadings, at his place of abode, 816 Hilltop Road, Elkton, Maryland. On December 10, 1998, the Superior Court held a hearing on appellant's request for a preliminary injunction and issued the injunction, ordering the defendants to deliver all copies of the customer list to appellant and to refrain from using the list. According to a return of private process server, on December 12, 1998, appellee was served with the

preliminary injunction and other pleadings by leaving copies at his place of abode, 816 Hilltop Road, Elkton, Maryland.

After receiving no response from the defendants, appellant filed a motion for judgment by default on January 4, 1999. The court granted the motion and scheduled a hearing on damages for January 26, 1999. The defendants did not appear at that time, and the Superior Court advised appellant to communicate to the defendants that the hearing would be reset for February 2, 1999. According to a return of private process server, on January 27, 1999, appellee was served with the motion, the notice of hearing, and other information by leaving copies at his place of abode, 816 Hilltop Road, Elkton, Maryland. On the morning of February 2, 1999, appellee, *pro se,* faxed a motion to dismiss, based on lack of personal jurisdiction, to Justice Howard J. Whitehead, Superior Court. The record indicates that the motion was received at that time, although it was not docketed until February 22.

On February 13, 1999, the Superior Court ruled that (1) the defendants were in default, and (2) because appellee's motion was untimely, it required no action. That ruling was docketed on February 22. On February 17, 1999, the Superior Court assessed damages, and on February 22, 1999, entered judgment for damages against appellee and GCB, but it did not include final injunctive relief.

On March 4, 1999, appellant filed a motion to alter or amend the judgment, supported by an affidavit of the same date, seeking a final injunction prohibiting GCB from continued use of the customer list. Appellee appeared through counsel and opposed the motion. The motion was heard on March 11, and on March 30 (docketed on April 2), the court granted the requested relief. The Superior Court, by its opinion and order dated March 30, 1999, accepted the factual allegations in the complaint as true, based on the default, and ruled that the facts established the liability of GCB "at least" with respect to Counts 1 (breach of agreement) and 4 (violation of Consumer Protection Act), and the liability of appellee "at least" as to Count 4 (violation of the Consumer Protection Act). The

court entered judgment for damages and injunctive relief on those counts. Because appellee is the only person or entity raising an issue before us, the pertinent judgment is the judgment against appellee with respect to the violation of the Consumer Protection Act.

On April 14, 1999, appellee filed a motion to vacate the judgment on the ground of lack of proper service, and in the alternative, on the ground of excusable neglect. The motion was supported by appellee's affidavit which, in pertinent part, stated (1) that he negotiated the sale of the customer list as a representative of GCB, (2) that he was an employee of GCB and a member of its board, but not an officer or a stockholder, (3) that negotiations occurred primarily by e-mail and faxes, and (4) that he received the suit papers on December 9, 1998, but did not respond then or at any time before February 2, 1999, because his Maryland counsel had advised him that he had not been served properly nor was he subject to the jurisdiction of the court.[3] On May 19, 1999, the Superior Court, after a hearing, implicitly found that appellee had been served and expressly found that appellee had willfully and inexcusably failed to defend the action. The court denied appellee's motion to vacate the judgment.

On May 28, 1999 (docketed on June 1), appellee filed a motion for reconsideration supported by affidavits. On June 9, 1999, the court denied that motion. On June 16, 1999, appellee filed a notice of appeal to the Massachusetts Appeals Court. That appeal is presently pending.

On August 6, 1999, appellant recorded the judgment against appellee in the Circuit Court for Cecil County. Appellee filed a motion to vacate that foreign judgment, and in the alternative, a motion to stay enforcement of the foreign judgment. On May 10, 2000, after a hearing, the circuit court granted the motion to vacate the judgment on the ground that appellee had insufficient contacts with Massachusetts to satisfy due

---

**3.** A subsequent affidavit by Maryland counsel confirmed that advice, but also asserted that counsel became concerned about the default judgment and advised appellee to file the February 2 *pro se* motion.

process. On May 18, 2000, appellant filed a motion for reconsideration. On May 24, 2000, the court denied the motion. On June 5, 2000, appellant filed a notice of appeal to this Court.

## Discussion

■ The question before us is whether the Massachusetts judgment is entitled to full faith and credit pursuant to the Uniform Enforcement of Foreign Judgment Act. In responding, we note that the merits of the controversy are not before us; the only issue is whether the Massachusetts court had jurisdiction.[4] In making that determination, our review is limited to ascertaining whether Massachusetts complied with its own laws, and whether its proceedings were in accordance with due process. *See Young v. Progressive Cas. Ins. Co.,* 108 Md.App. 233, 245, 671 A.2d 515 (1996)(citing *Renwick v. Renwick,* 24 Md.App. 277, 287, 330 A.2d 488 (1975)); *Imperial Hotel, Inc. v. Bell Atlantic Tri–Con Leasing Corp.,* 91 Md. App. 266, 273–74, 603 A.2d 1371 (1992). Due process requires sufficient minimum contacts with the forum state so as " 'not [to] offend "traditional notions" of fair play and substantial justice.' " *See Columbia Briargate Co. v. First Nat'l Bank,* 713 F.2d 1052, 1057 (4th Cir.1983)(citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 563–64, 62 L.Ed.2d 490, 498 (1980)). This burden is satisfied when there has been "some act [related to the cause of action alleged] by which the [non-resident] defendant purposefully avails [himself] of the privilege of conducting activities within the forum State." *Id.* (citing *Hanson v. Denckla,,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958)).

## Issues

Appellant contends that jurisdiction exists under the Massachusetts long-arm statute, Mass. Ann. Laws ch. 223A, § 3(a) and (c), and that appellee has been afforded due process. Subsections (a) & (c) provide, in pertinent part:

---

4. In this Court, appellee does not challenge service of process.

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

. . . .

(c) causing tortious injury by an act or omission in this commonwealth.

Appellee does not expressly concede that the Massachusetts long-arm statute, by its terms, provides jurisdiction in this case. On the other hand, it is not clear that appellee is arguing that subsections (a) & (c) do not provide jurisdiction.[5] What appellee does argue is that the exercise of jurisdiction is prohibited by the requirements of due process because (1) appellee's contacts with Massachusetts, consisting of telephone calls, faxes, and e-mails, were insufficient and (2) because appellee was acting as a representative of a corporation, the fiduciary shield doctrine would prevent the exercise of jurisdiction. Appellee does not state a position as to whether the fiduciary shield doctrine should be applied as a matter of state law or as a constitutional principle. We assume his position is the latter because he argues that the exercise of jurisdiction in this instance does not comport with due process.

In addition to the above, appellee argues that one of the requirements of the Massachusetts Consumer Protection Act was not met. The statute in question declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Ann. Laws ch. 93A, § 2(a). "Trade" and "commerce" include, in pertinent part, the offering for sale or sale of any real

---

5. It appears that appellee assumes that he did not commit a tort in Massachusetts because he argues that the only part of the long-arm statute that could apply would be subsection (d), the terms of which were not met. Subsection (d) provides for jurisdiction when an entity causes tortious injury in Massachusetts by an act or omission outside of Massachusetts, if the entity regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Massachusetts. As earlier indicated, appellant does not rely upon that section.

or personal property. Ch. 93A, § 1(b). Section 9 provides remedies for consumers, and § 11 provides remedies for persons engaged in trade or commerce. Appellee points to the last paragraph in § 11, which provides as follows:

No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred *primarily and substantially within the commonwealth.* For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

(Emphasis added.)

### Jurisdiction Over The Corporate Entity (GCB)

The Massachusetts long-arm statute reaches to the fullest extent permitted by due process, provided that the conduct complies with the statute's terms. *Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76, 80 (1979)(stating that "G.L.c. 223A, § 3[ ] asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established."). As stated in *Schinkel v. Maxi–Holding, Inc.,* 30 Mass.App.Ct. 41, 565 N.E.2d 1219, 1222 (1991), "[t]he long arm statute extends the jurisdictional reach of Massachusetts courts to non-residents who satisfy certain 'minimum contact' connections with Massachusetts, as defined in G.L.c. 223A, § 3(a)-(h), as amended through St.1987, c. 100, and who are served with process out of State in accordance with the procedures of §§ 6–8."

We reiterate that we do not reach the merits. The Massachusetts court entered judgment by default against appellee with respect to appellant's claim based on ch. 223A, § 93A, the Consumer Protection Act. The court did not enter judgment with respect to the common law misrepresentation count, but the misrepresentation alleged was the basis for the Consumer Protection Act count, as well as for the misrepresentation count. Consequently, we conclude that cases applying the Massachusetts long-arm statute and discussing due

process in the context of alleged misrepresentations are relevant to the issues before us, even if they did not involve a Consumer Protection Act claim.[6]

In *Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978 (1st Cir. 1986), the United States Court of Appeals for the First Circuit, applying the Massachusetts long-arm statute, held that a telex sent by defendant to plaintiff in Massachusetts, which contained alleged misrepresentations, was sufficient to confer jurisdiction under ch. 223A, § 3(c) because the tort occurred in Massachusetts. The court, in part, relied on its earlier decision in *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661 (1st Cir.1972). In *Murphy,* the court, applying ch. 223A, § 3(c), held:

> Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state. The element of intent also persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Id.* at 664 (footnote omitted). *Accord Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1084 (1st Cir.1973) (misrepresentation in Massachusetts by defendant's employee concerning plaintiff's noncompliance with specifications provided basis for jurisdiction under § 3(c) of c. 223A); *Burtner v. Burnham,* 13 Mass.App.Ct. 158, 430 N.E.2d 1233, 1236–37 (1982) (defendant's misrepresentations by mail and telephone to plaintiff in Massachusetts regarding acreage of property

---

**6.** The parties do not raise the question whether a Consumer Protection Act claim is "tortious" within the meaning of ch. 223A, § 3(c). The statutory Consumer Protection Act claim may include and be based on misrepresentation in a common law sense. *See McEvoy Travel Bureau, Inc. v. Norton Co.,* 408 Mass. 704, 563 N.E.2d 188, 194–95 (1990). We conclude that while an injury compensable under the act is not necessarily tortious, it was in this instance.

provided basis for jurisdiction under § 3(c)); *Landmark Bank v. Machera*, 736 F.Supp. 375, 383–84 (Ma.1990)(misrepresentations by mail and telephone to plaintiff in Massachusetts regarding plaintiff's investment provided basis for jurisdiction under § 3(c) over defendant corporation, partnership, and general partner). In *Whittaker, Burtner*, and *Landmark Bank*, the courts also indicated that asserting jurisdiction based on a misrepresentation received in Massachusetts, which caused tortious injury in Massachusetts, complied with due process. *See Whittaker*, 482 F.2d at 1083–84; *Burtner*, 430 N.E.2d at 1237; *Landmark Bank*, 736 F.Supp. at 385–86. The statements were purposefully transmitted to Massachusetts and the cause of action was related to the statements.

Sustaining jurisdiction under one section is sufficient; thus, we need not go beyond that. We observe, however, that the misrepresentation in Massachusetts provides a basis for jurisdiction that complies with due process under section 3(a) as well as § 3(c). *See Ealing*, 790 F.2d at 981–82 (stating that the reference in § 3(a) to "transacting any business" is "general and applies to any purposeful acts by an individual, whether personal, private, or commercial" and holding that a telex with alleged misrepresentations sent to the plaintiff in Massachusetts establishes prima facie jurisdiction under § 3(a)); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 197 (1st Cir.1980)(holding that sending two threatening infringement notices into Massachusetts constituted a transaction of business under § 3(a) giving rise to the cause of action).

If we were concerned with jurisdiction over GCB, the above cases would be on point and would persuasively lead us to the conclusion that the long-arm statute and due process has been complied with in the case before us. The above cases were not concerned, however, with obtaining jurisdiction over individuals acting as agents of corporations.

### Fiduciary Shield Doctrine in Massachusetts

This brings us to a discussion of the fiduciary shield doctrine. The fiduciary shield doctrine serves as a limitation on the reach of a long-arm statute with respect to obtaining

jurisdiction over an individual who acted solely as a representative of a corporation, rather than on his or her own behalf. *See Cawley v. Bloch,* 544 F.Supp. 133, 135 (D.Md.1982). Courts discussing the doctrine have sometimes identified two exceptions: (1) when the individual is the alter ego of the corporation, *e.g., Yankee Group, Inc. v. Yamashita,* 678 F.Supp. 20, 22 (D.Mass.1988), or (2) when the individual has a substantial interest in the corporation, *e.g., Zeman v. Lotus Heart, Inc.,* 717 F.Supp. 373, 377–78 (D.Md.1989).

We expressly note that this doctrine relates to *jurisdiction over the person* of the individual defendant. It does not relate to the liability of that defendant.[7] Indeed, many courts that have criticized the doctrine have pointed out the arguable inconsistency between the fact that the individual is subject to liability if the individual commits a tort, even though acting as an agent for a corporation, but is not subject to jurisdiction in the state in which the individual committed the tort. *See, e.g., Columbia Briargate,* 713 F.2d at 1059–60 (discussing the illogical result that occurs when an individual may be held liable substantively "for a tort [ ] commit[ted] in [a] fiduciary role in the forum state but the court of the forum state may not, under its long-arm statute, require him to appear and defend the suit arising out of that tort in the forum state."); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981)(stating that "there is a dichotomy between the principles governing the personal liability of corporate agents for torts committed in their corporate roles and the principles governing the amenability of such agents to personal jurisdiction solely on the basis of those acts."); *Donner v. Tams–Witmark Music Library, Inc.,* 480 F.Supp. 1229, 1234

---

7. Generally speaking, an individual, even though acting on behalf of a corporation, is subject to liability if the individual commits a tort. In the case before us, the claim with which we are concerned was a claim under Mass. Ann. Laws ch. 93A. Under the laws of Massachusetts, a corporate officer is liable if the officer participated in a violation of that statute. *See Nader v. Citron,* 372 Mass. 96, 360 N.E.2d 870, 875 (1977). Appellee's liability was determined by the default judgment, subject to this Court's determination of jurisdiction with respect to whether it can be enforced in this state.

(E.D.Pa.1979)(stating "[i]t would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose the same shield as a defense against substantive liability.").

We are not aware of a Massachusetts appellate decision expressly declining to follow the fiduciary shield doctrine. It has never been applied by Massachusetts, however, and federal courts, applying Massachusetts law, have stated that Massachusetts does not recognize the doctrine. *See Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F.Supp. 1106, 1111 (D.Mass.1983), *affirmed on other grounds*, 743 F.2d 947 (1st Cir.1984); *Yankee Group, Inc.*, 678 F.Supp. at 22. The Supreme Judicial Court of Massachusetts has pointed out that its long-arm statute is intended to reach the limits of the United States Constitution. *See Ross v. Ross*, 371 Mass. 439, 358 N.E.2d 437, 438 (1976). The United States District Court for the District of Massachusetts, in *Yankee Group, Inc.*, 678 F.Supp. at 22, concluded that the fiduciary shield doctrine is not constitutionally based and that it would be inconsistent to hold that Massachusetts would recognize such a limitation.

## Fiduciary Shield Doctrine in Maryland

To summarize up to this point, we conclude that under the law of Massachusetts, given the default judgment, the misrepresentation by GCB in which appellee participated in the State of Massachusetts satisfied both the long-arm statute (tortious act in the state) and due process, with respect to appellee's corporate principal. *See Murphy*, 460 F.2d at 664 (holding that the intentional delivery in Massachusetts by mail or telephone of a false statement originating outside the state, with the intention that it be relied upon to the injury of a resident of that state, is an "act ... within [the] commonwealth" pursuant to ch. 223A, § 3(c)). Additionally, the fiduciary shield doctrine would not be applied by a Massachusetts court, *see Johnson Creative Arts, Inc.*, 573 F.Supp. at 1111; *Yankee Group, Inc.*, 678 F.Supp. at 22.

We continue with our discussion, however, and examine the basis of the circuit court's ruling in the case before us. The circuit court relied on cases decided under Maryland law holding that merely sending correspondence, facsimile transmissions, or other forms of communication into Maryland are insufficient to confer jurisdiction. *See, e.g., Leather Masters v. Giampier Ltd.*, 836 F.Supp. 328, 331 (D.Md.1993) (breach of contract suit against a nonresident corporation arising out of the sale of goods), and *Cape v. von Maur*, 932 F.Supp. 124, 128 (D.Md.1996) (breach of contract, malpractice, fraud, and intentional infliction of emotional distress suit against attorneys in Germany based on telephone calls and correspondence). The cases relied upon, however, did not involve a tortious act committed in Maryland.

The circuit court also implicitly relied on the fiduciary shield doctrine, citing *Cawley v. Bloch*, 544 F.Supp. 133 (D.Md.1982). *Cawley* involved a suit against a nonresident corporation and two of its officers who allegedly made fraudulent and negligent misrepresentations. The individuals were physically present in Maryland and allegedly performed tortious acts in the State. The district court in *Cawley* referenced its prior decision in *In re Mid–Atlantic Toyota Antitrust Litigation*, 525 F.Supp. 1265, 1270–71 (D.Md.1981), *modified on other grounds*, 541 F.Supp. 62 (D.Md.1981), *aff'd, Pennsylvania v. Mid–Atlantic Toyota Antitrust Litigation*, 704 F.2d 125 (4th Cir.1983) wherein, relying on *Merkel Assoc., Inc. v. Bellofram Corp.*, 437 F.Supp. 612 (W.D.N.Y.1977), the court held that the fiduciary shield doctrine did not apply when a corporate officer committed a personal or business tort in Maryland, the forum state. The *Cawley* court observed, however, that, subsequent to *Mid–Atlantic Toyota*, (1) the Second Circuit, in *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir.1981), rejected the *Merkel* notion that the fiduciary shield doctrine is never available when the acts of the corporate agent are tortious. Instead, it held that the fiduciary shield doctrine was an equitable doctrine, with its application dependent upon the facts of the case, and (2) this Court, in a case of first impression, *Umans v. PWP Services, Inc.*, 50 Md.App.

414, 420, 439 A.2d 21 (1982), adopted the fiduciary shield doctrine. The Court described our opinion in *Umans* as follows:

> The court did not expressly address the applicability of the fiduciary [shield] doctrine in situations in which an individual defendant has committed a tort in Maryland. However, the suit at issue included claims for defamation and intentional interference with contractual arrangements. The court noted that plaintiffs claimed three bases for personal jurisdiction over the individual defendant, including Md. Ann.Code Cts. & Jud. Proc. § 6–103(b)(3), which provides for personal jurisdiction over any person who "causes tortious injury in the state by an act or omission in the state." Referring to all three claimed bases of jurisdiction, the court held that there was no need to examine the extent of the defendant's contacts with Maryland, since his only contacts were those as a corporate officer. If the court had believed that there was an exception to the general rule when the defendant has committed a tort, the court presumably would have so stated and then proceeded to examine the sufficiency of defendant's contacts with Maryland under § 6–103(b)(3).
>
> In light of these developments, an individual's acts in Maryland on behalf of his corporation [3] do not subject him to personal jurisdiction in Maryland, even when those acts are tortious.
>
> 3. While the Maryland courts have not explicitly adopted the analysis of *Marine Midland,* the standard expressed there is simply a method of determining when an individual can be said to have acted on his corporation's behalf rather than on his own behalf.

*Cawley,* 544 F.Supp. at 136.

The United State Court of Appeals for the Fourth Circuit, in an appeal from the United States District Court for the District of South Carolina, discussed the fiduciary shield doctrine at length. *See Columbia Briargate Co. v. First National Bank in Dallas,* 713 F.2d 1052 (4th Cir.1983). The suit was one for intentional misrepresentation in connection with a contract of sale against a nonresident corporation and one of

its officers. The officer negotiated the sale while physically present in the forum state. The Fourth Circuit observed that the controlling law in the case before it was that of South Carolina. *Id.* at 1054. Under the law of that jurisdiction, an agent's liability for his own tortious acts was unaffected by the fact that he acted in a representative capacity. The individual defendants did not question the South Carolina rule with respect to substantive liability, but argued that they were not subject to jurisdiction under the fiduciary shield doctrine because they acted on behalf of a corporation. *Id.* at 1055. The Fourth Circuit, acknowledging that decisions were not uniform with respect to the basis of the doctrine, pointed out that some courts have declared the doctrine to be one of state law, *e.g., Marine Midland Bank,* 664 F.2d at 902 n. 3, and other courts have declared it to be a constitutional principle based on due process, *e.g., Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir.1974).

The Fourth Circuit concluded:

We find the rationale enunciated in *Marine Midland,* irrespective of its merits as a justification for an equitable doctrine to be applied by a state in the construction of its own statute, plainly insufficient to support a decision that jurisdiction over a non-resident corporate agent who has in his fiduciary capacity committed a tort in a forum state may not be acquired under the forum long-arm statute which is as broad as due process itself solely on constitutional due process grounds. That is not to say that the amenability of a nonresident corporate agent to long-arm service is always the same as his corporate employer. There are situations where the corporation may be amenable and the agent is not under sound due process reasoning. The circumstances under which the corporation may be amenable and the agent not are accurately illustrated in the decision of the court in *Idaho Potato Com'n v. Washington Potato Com'n,* 410 F.Supp. 171, 182 (D.Idaho 1976).

In *Idaho Potato,* the court distinguished between the situation where the nonresident agent had come into the forum state and committed there the alleged tort and that

where the nonresident agent had never been in the state and had no causal connection within the state with the alleged tort. In the first situation, it would find clear amenability to jurisdiction under the forum's long-arm statute. . . . On the other hand, it would deny amenability to jurisdiction over an agent whose activities occurred without the forum state, though those activities may have had an effect in the forum state.

. . . .

It is interesting that this rule on the scope of the fiduciary shield doctrine, as developed in *Idaho Potato,* would be consistent with most of the decisions in which the doctrine has been invoked as well as with those decisions which proceeded strictly along lines of constitutional analysis without reference to the fiduciary shield doctrine.

*Columbia Briargate,* 713 F.2d at 1060–61.

Observing that the South Carolina long-arm statute had been interpreted to extend the amenability of a nonresident to jurisdiction to the extent allowed by due process, *see id.* at 1057, the Court concluded:

After canvassing the reasoning of the various courts which have sought to provide a reasoned analysis of the question, we are persuaded that when a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process. On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support

jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state. *Id.* at 1064–65.

Applying that conclusion, the Fourth Circuit found that the individual defendant was subject to the jurisdiction of the forum court because he committed the alleged tort within the forum state, and, for due process purposes, it was unimportant whether he was acting in his corporate or personal role. *Id.* at 1065.

The Fourth Circuit went on to hold that even if South Carolina did recognize the fiduciary shield doctrine as an equitable rule, the doctrine would not prevent jurisdiction because the case before it would come within the rationale of the exception that applies when the corporation is a mere shell or alter ego. The Court explained that, because the corporate defendant was a national bank immune from suit in South Carolina by statute, not permitting suit against the agent would be inequitable, just as in the alter ego situation. *Id.*

The holding in *Columbia Briargate* that the fiduciary shield doctrine is not a constitutional principle suggests that this Court should look to the law of Massachusetts to determine if the fiduciary shield doctrine applies, even if this state's law is different. As previously stated, the law of Massachusetts does not recognize the fiduciary shield doctrine. On the other hand, if Maryland recognizes the fiduciary shield doctrine as a constitutionally based principle, arguably Maryland courts could or should find that the Massachusetts court in the case before us did not have jurisdiction because of the fiduciary shield (assuming that no exception applies), even though Massachusetts would not apply the doctrine.

This leads us to a reexamination of our earlier opinion in *Umans v. PWP Services, Inc.*, 50 Md.App. 414, 439 A.2d 21 (1982), the basis for later decisions by the United States District Court for the District of Maryland and the Fourth Circuit, in which those courts applied the fiduciary shield doctrine as part of Maryland law. *See, e.g., Cawley,* 544 F.Supp. at 136; *Zeman,* 717 F.Supp. at 376. In *Umans,* a

nonresident corporation and an individual acting on its behalf were sued in Maryland. Various torts were alleged. To the extent pertinent, the plaintiffs sued the individual defendant for intentional interference with contractual relations. The individual defendant challenged jurisdiction, and the plaintiffs asserted that there was jurisdiction under the Maryland long-arm statute, Cts. & Jud. Proc. § 6–103(b)(1), (3) & (4).[8]

To the extent relevant, we concluded:

In the instant case, all of the facts before the court showed that [the individual defendant's] only contacts in Maryland were those as a corporate officer. Although the precise point has not been presented to the Maryland courts it appears that such acts do not subject one to personal jurisdiction. The rule seems to be all but universal. *See Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 786 (D.Md.1978):

"The Court need not reach the question of whether Campbell's contacts with Maryland are sufficient in number under the statute, since Campbell was acting on corporate business during those meetings. Contacts as a corporate representative on corporate business do not give rise to personal jurisdiction over the individual. *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir.1969); *accord, Lehigh Valley Industries, Inc. v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.1975), aff'd, 527 F.2d 87 (2d Cir.1975)."

---

8. Those subsections provide:

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

. . .

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

*See also, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir.1980); *Weller v. Cromwell Oil Company,* 504 F.2d 927 (6th Cir.1974); *Wilshire Oil Company of Texas v. Riffe,* 409 F.2d 1277 (10th Cir.1969); *Spelling–Goldberg Productions v. Bodek & Rhodes,* 452 F.Supp. 452 (E.D.Pa.1978); *Quinn v. Bowmar Publishing Company, supra; Idaho Potato Commission v. Washington Potato Commission,* 410 F.Supp. 171 (D.Idaho 1976); *Lehigh Valley Industries, Inc. v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.1975); *But see, Chancellor v. Lawrence,* 501 F.Supp. 997 (N.D.Ill.1980).

The appellants' reliance on *Topik v. Catalyst Research Corporation,* 339 F.Supp. 1102 (D.C.Md.1972) is misplaced. Although the Court there held that the fiduciary relationship between shareholders and directors made for an exception to the universal rule, that exception is obviously not involved here. Also not involved here is another exception where the corporation and the individual are virtually one and the same as in *Groom v. Margulies,* 257 Md. 691, 265 A.2d 249 (1970) and *Feldman v. Magnetix Corporation,* 50 Md.App. 308, 437 A.2d 895 [1981].

*Umans,* 50 Md.App. at 420–21, 439 A.2d 21.

The rule adopted was a general one that did not depend on the extent of an individual's contacts with the State, and there was no indication as to whether it was constitutionally based or adopted as State law. In *Beaty v. M.S. Steel Co.,* 401 F.2d 157 (4th Cir.1968), an appeal from the United States District Court for the District of Maryland, jurisdiction was challenged by the nonresident corporate defendant. The plaintiffs were injured by virtue of an alleged defect in a product shipped into Maryland by the defendant. There was no suggestion that any element of a tort was committed in Maryland other than the injury. The court, in discussing what is currently § 6–103(b)(4) [9], stated:

---

**9.** The only changes to the language of this statutory provision since that time are that the tortious injury may now be "in the state or outside of

Modeled upon, but more restrictive than, the Uniform Interstate and International Procedure Act, 9B U.L.A. 307–15 (1966 ed.), the Maryland statute empowers a court to exercise personal jurisdiction over a person or corporation:

"causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State...."

Art. 75 § 96(a)(4) Maryland Code Ann. (Supp.1965). This language was drafted several years after *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961),[10] upon which plaintiffs here rely heavily. In *Gray*, the Illinois court interpreted that state's long-arm statute to cover a non-resident defendant who had no connection with Illinois except that it had acted negligently out of state, causing injury in the state. The Illinois statute provided that in personam jurisdiction may be asserted over any person who "commits a tortious act" within the state. It was with knowledge of the *Gray* resolution of the ambiguity inherent in the phrase "tortious act" that the draftsmen of the Uniform Act, and derivatively the Maryland legislature, explicitly differentiated between in-state and out-of-state conduct. Thus both the Uniform Act and the Maryland law provide in subsection (a)(3) that a person may be subject to in personam jurisdiction if he "[causes] tortious injury in this State by an act or omission in this State."

---

the state" and the provision now includes deriving substantial revenue from goods and manufactured products, in addition to food and services.

10. The court in *Gray* interpreted a provision of the Illinois long-arm statute (committing a tortious act in the state) as being satisfied when an injury occurred in the state, even though the act occurred outside of the state, because injury is a necessary component of a tort. The court also found no violation of due process. The Illinois statute did not contain a separate provision addressing injury caused in Illinois by a tortious act committed outside of Illinois. As a result of *Gray*, many state statutes, including Massachusetts and Maryland, distinguished between tortious acts and injuries.

This is followed by the previously quoted section dealing with out-of-state conduct causing injury in the state and requiring for the exercise of jurisdiction some other reasonable connection between the state and the defendant besides the single out-of-state act. This formula was presumably devised to obviate any possible due process objections. Since the Illinois statute did not require an independent connection between defendant and the state and since that is the crucial element in this case, it is abundantly clear that plaintiffs' reliance upon the *Gray* decision is altogether misplaced.

*Id.* at 159–60 (footnote omitted). The Court went on to state that it did not have to address whether due process would permit the exercise of jurisdiction based on the occurrence of the injury in the state because the Maryland statute did not permit it.[11] *Id.* at 161.

---

**11.** To the same effect with respect to the Massachusetts statute, *see Murphy*, 460 F.2d at 663–64, in which the court stated:

Section 3(c) gives to the Massachusetts courts jurisdiction over parties who cause "tortious injury by an act or omission in this commonwealth." This language is derived from the Uniform Interstate and International Procedure Act and represents an effort to resolve, legislatively, the type of conflict over the meaning of the term "tortious act within this state" which has developed between the Illinois and the New York courts. *Compare Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961) with *Feathers v. McLucas*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Section 3(c) is intended to apply only when the act causing the injury occurs within the Commonwealth. *St. Clair v. Righter*, 250 F.Supp. 148, 150–51 (W.D.Va.1966); Commissioners' Note, Uniform Interstate and International Procedural Act, 9B Uniform Laws Annot. § 1.03. To give it any broader meaning would render § 3(d) a nullity. *See Beaty v. M.S. Steel Co.*, 276 F.Supp. 259, 262 (D.Md.1967), *aff'd*, 401 F.2d 157 (4th Cir.1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). The question we must decide is whether the delivery in Massachusetts by mail or telephone of a false statement originating outside the state, followed by reliance in Massachusetts, is an "act ... within this commonwealth."

Nevertheless, courts applying Massachusetts law have stated that its long-arm statute reaches to the limits of due process, without limiting this broad reach to particular subsections. The particular circumstances of the case, however, must fit within one of the categories of ch. 223A. *See, e.g., Burtner*, 430 N.E.2d at 1235–36 (stating that the long-

The statements in *Beaty*, suggesting that distinguishing between (1) causing tortious injury in the state by an act in the state, and (2) causing tortious injury in the state by an act outside of the state indicates that the Maryland statute might not go to the limits of due process,[12] probably accounts for later decisions by courts applying Maryland law, in which they have sometimes stated that the Maryland long-arm statute reaches to the limits of due process, and other times that it does not. *Compare Camelback Ski Corp. v. Behning*, 307 Md. 270, 274, 513 A.2d 874 (1986), *judgment vacated and remanded on other grounds*, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *reaff'd*, 312 Md. 330, 539 A.2d 1107 (1988), *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988)(stating that "[t]his Court has consistently stated that the intent of the legislature in enacting Maryland's long arm statute was to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause.") and *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551 (1977)(same), *with Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 318 (D.Md.1983)(positing that "[n]ot all of the subsections of the [Maryland] long arm statute are cotermi-

---

arm statute extends to the limits allowed by the Constitution, as long as the "circumstances of the particular case come within one of the *specific subsections* of c. 223A.")(emphasis in original); *Good Hope Indus.*, 389 N.E.2d at 80 (stating that "c.223A, § 3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established.").

**12.** The Court stated that the Maryland long-arm statute "was modeled upon, but more restrictive than, the Uniform Interstate and International Procedure Act, 9B U.L.A. 307–15 (1966 ed.)." *Beaty*, 401 F.2d at 159. The Court further noted that the Uniform Act was largely based upon the Wisconsin long-arm statute, and that Professor Foster of Wisconsin Law School, when describing the thought processes of the draftspersons of the Wisconsin statute, stated, "[t]o avoid abuse or possible unjust application of the statute, we frequently backed away in our drafting from what we thought were the outer limits permissible under the Fourteenth Amendment." *Id.* at 160. The *Beaty* Court also stated that "it is clear that at least where the legislature has acted, even though the statute may not go to the limits of due process, the courts of a state may not go further and assert jurisdiction over persons not embraced within that legislation." *Id.* at 161.

nous with due process .... [s]ubsections (b)(3) and (b)(4) were intended by the legislature to allow the exercise of personal jurisdiction within more narrow limits than the Due Process Clause would tolerate."), and *Craig v. General Finance Corp.*, 504 F.Supp. 1033, 1036 (D.Md.1980)(same)(citing *Beaty*, 401 F.2d 157). This, in turn, has led to statements that Maryland recognizes the fiduciary shield doctrine with respect to subsections (b)(3) and (b)(4), but not as to subsection (b)(1). *See Copiers*, 576 F.Supp. at 329; *Zeman*, 717 F.Supp. at 375–76. The basis for those statements was that (b)(1) has been interpreted to extend to the full extent of the constitution, but (b)(3) and (b)(4), merely by virtue of the existence of (b)(4), did not extend to the full limit of due process, as due process requirements have been enunciated. *See Copiers*, 576 F.Supp. at 329; *Zeman*, 717 F.Supp. at 376.

The federal district court in *Copiers* relied on its prior decision in *Craig*, 504 F.Supp. 1033. *Craig*, in turn, relied on *Geelhoed v. Jensen*, 277 Md. 220, 352 A.2d 818 (1976), and *Krashes v. White*, 275 Md. 549, 341 A.2d 798 (1975). *See* 504 F.Supp. at 1036. In *Geelhoed*, the Court of Appeals stated that subsections (b)(3) and (b)(4) were more restrictive than certain long-arm statutes, referring to Illinois, because they distinguished between a tortious act and a tortious injury. 277 Md. at 223 n. 3, 352 A.2d 818. In *Krashes*, the Court of Appeals described the Maryland long-arm statute as having a constitutional reach, but then suggested that there might be situations not reached by the statute but which are constitutional. 275 Md. at 558–59, 341 A.2d 798.

The Fourth Circuit has called into question the fiduciary shield doctrine as stated in *Umans*. In *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1199–1200 (4th Cir. 1989), an appeal from the United States District Court for the District of Maryland, the Court stated:

Although the Maryland Court of Special Appeals has applied the fiduciary shield exception in one case, *Umans v. PWP Services, Inc.*, 50 Md.App. 414, 420, 439 A.2d 21 (1982) (contacts as corporate officer did not subject defendant to personal jurisdiction), a recent decision by the Maryland

court and a decision in this court bearing on these general principles has called the decision in *Umans* into question.

In *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1064 (4th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984), we stated:

> When a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable long-arm statute ..., he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process.

As *Columbia Briargate* makes clear, the fiduciary shield rule is solely a matter of statutory construction under state law and is not required under the due process clause. Since that decision, the Maryland Court of Appeals has emphasized that Maryland's long-arm statute is intended "to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause...." *Camelback Ski Corp. v. Behning*, 307 Md. 270, 274, 513 A.2d 874 (1986), judgment vacated and remanded on other grounds, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *reaff'd*, 312 Md. 330, 539 A.2d 1107 (1988), *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988). The district court in the present case set out numerous acts and omissions of the individual counter-defendants in Maryland sufficient to satisfy due process requirements of minimum contacts and fundamental fairness. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In light of *Camelback* and the absence of a statement by the Maryland Court of Appeals that the fiduciary shield rule limits the reach of the Maryland long-arm statute under such circumstances as are here involved, it appears that the district court properly exercised jurisdiction over the individual counter-defendants.

As our federal district court later pointed out, however:

A difficulty with [the] reasoning [of *Western Contracting* ] is that the Maryland Court of Appeals had previously made the same statement concerning the reach of the state's long-arm statute, before the Maryland Court of Special Appeals decided *Umans v. PWP Services, Inc.*, 50 Md.App. 414, 439 A.2d 21 (1982), recognizing the fiduciary shield doctrine. *See, e.g., Geelhoed v. Jensen*, 277 Md. 220, 226, 352 A.2d 818, 822 (1976).

*Birrane v. Master Collectors, Inc.*, 738 F.Supp. 167, 169 n. 1 (D.Md.1990).

In revisiting our holding in *Umans*, we come to the following conclusions:

■ 1. While the Maryland long-arm statute is not coextensive with due process in the same sense as the Illinois statute in *Gray*, it does reach to the extent of due process as long as the acts in question come within its terms. In other words, there remains a two-step process: (a) statutory interpretation, and if the statute is satisfied, (b) an analysis of due process.

■ 2. The fiduciary shield doctrine is an equitable doctrine, not a constitutional principle. If it exists, it exists as a matter of state law and serves to limit jurisdiction over corporate agents as considerations of equity may dictate.

3. If the doctrine exists, it is not the rigid rule described in *Umans*, but is fact-dependent and should be applied on a case-by-case basis.

4. The doctrine as stated in *Umans* is inconsistent with the intent of the long-arm statute to reach to the limits of due process, as long as the acts are within the statute's terms. Applying the doctrine properly, however, will rarely produce a different result than that produced by a due process analysis.[13]

---

**13.** See the discussion in *Ticketmaster–New York v. Alioto*, 26 F.3d 201 (1st Cir.1994), *Marine Midland*, 664 F.2d at 902, and *Zeman*, 717 F.Supp. at 377–78. In *Marine Midland*, the court noted that "[t]he fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long

It will only be applied in very unusual circumstances that we cannot presently foresee and articulate.

5. As a result of the above, we come to the conclusion that this case was and is properly decided on due process grounds and that due process was not satisfied.

## Due Process

With respect to due process, Massachusetts and the First Circuit cases cited herein (*see, e.g., Murphy* ) indicate that due process was satisfied with respect to appellee's corporate principal. The basis of that conclusion is that appellee, as a corporate agent, knowingly sent a fraudulent communication into Massachusetts, a tortious act in the state. That view, without greater contacts and no physical presence in the state, has been limited to claims of fraud and does not extend to

---

arm statute." 664 F.2d at 902. The court further stated that because the fiduciary shield doctrine is an equitable principle, "application requires an analysis of the particular facts of the case .... [and][i]n each instance, fairness is the ultimate test." *Id.* By way of example, the court stated that the fiduciary shield would not offer protection to a corporate employee who acts in his or her own personal interest rather than in the best interest of the corporation, or if the corporation is merely a shell for its owner. *Id.*

In *Zeman*, the court, in applying the fiduciary shield doctrine to subsections (b)(3) and (b)(4), held that one of the exceptions applied. The court held that, because the individuals were majority stockholders and officers of the corporation, they would receive sufficient personal benefit from the business conducted in Maryland, so that it would be fair to subject them to suit in Maryland. *Id.* at 377–78.

In *Alioto*, the forum state was Massachusetts, and the question was whether jurisdiction existed over a nonresident individual who allegedly made a defamatory comment during a telephone conversation with a newspaper reporter located in Massachusetts. The defendant did not initiate the call but merely responded to it. The Court first considered whether there was jurisdiction under § 3(c) of the long-arm statute, but did not decide the issue because it decided that exercising jurisdiction in the case would not comport with due process. 26 F.3d at 206. In order for there to be due process, (1) the cause of action must arise out of or relate to the defendant's conduct, (2) the defendant must purposefully avail himself of the privilege of conducting activities within the state, and (3) jurisdiction must be consistent with fair play and substantial justice. *Id.* The Court concluded that, while the first two factors may have been barely met, exercising jurisdiction would not be fair and, therefore, would not comport with due process. *Id.* at 212.

other claims, such as negligence and contracts. *See Rye v. Atlas Hotels, Inc.*, 30 Mass.App.Ct. 904, 566 N.E.2d 617, 619 (1991). The *Murphy* principle, while criticized by some courts, *see Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930–31 (6th Cir.1974), has been followed by the Fourth Circuit; *see Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065–69 (4th Cir.1982).

None of the cases cited by appellant and none that we have reviewed, however, have found compliance with due process when, as here, (1) the individual was never physically present in the forum state, (2) the individual was acting on behalf of a corporation and not on his own behalf (the representations and warranties herein were by GCB), (3) the contacts consisted of a few telephone conversations, faxes, and e-mails, in addition to the faxed documents which formed the basis for the tort, and (4) the individual had no other contacts with the forum state. The cases we have found upholding due process with respect to jurisdiction over a corporate agent involve greater contacts than those set forth above.

We conclude that the judgment against appellee did not comport with due process.

### Annotated Laws of Massachusetts ch. 93A.

Appellee relies on a provision in ch. 93A, § 11, which states that the actions and transactions referred to must have occurred primarily and substantially in Massachusetts. In light of our earlier rulings, we need not address this argument. We note, however, that the provision is not a jurisdictional test but is, rather, part of the cause of action under the statute. *See Camp Creek Hospitality Inns v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir.1998) (appeal from the United States District Court for the Northern District of Georgia, challenging a cause of action under the Massachusetts Consumer Protection Act on the ground that the action did not occur primarily or substantially within Massachusetts); *Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F.Supp. 286, 318–20 (S.D.N.Y.1998) (challenge to cause of action under the Massachusetts Consumer Protection Act on the ground that

the action did not occur primarily or substantially within Massachusetts). As previously observed, there was a default judgment entered against appellee with respect to the cause of action. Our review of that judgment is limited to the issues discussed herein.

### Other Matters

We need not address principles of *res judicata* because the February 2, 1999 motion to dismiss filed by appellee was not decided by the Massachusetts court because it was untimely. Appellee's subsequent motion to vacate was based on alleged deficiency in service of process and did not raise personal jurisdiction. Consequently, the Massachusetts courts have not yet decided the jurisdictional issue. *See Young*, 108 Md.App. at 247, 671 A.2d 515; *Imperial Hotel*, 91 Md.App. at 273 n. 1, 603 A.2d 1371. (stating that because the question of jurisdiction was not litigated in the forum court, there is no *res judicata* issue). Additionally, there is a pending appeal in Massachusetts, and the issue of personal jurisdiction may or may not be decided in that appeal.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**