**COMPASS MARKETING, INC., Plaintiff**

v.

**SCHERING–PLOUGH CORP., et al., Defendants.**

**No. CIV.AMD 04–1663.**

United States District Court, D. Maryland.

July 12, 2006.

See also 391 Md. 117, 892 A.2d 479.

Jeffrey S. Jacobovitz, Schiff Hardin LLP, Washington, DC, Byron L. Warnken, Warnken LLC, Towson, MD, Michael J. Boffa, William M. Hannay, Schiff Hardin LLP, Chicago, IL, for Plaintiff.

Anthony Herman, Christopher Michael Denig, Michael John Fanelli, Covington and Burling, Robert J. Lundman, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM and ORDER

DAVIS, District Judge.

Plaintiff Compass Marketing, Inc. ("Compass"), instituted this action alleging a price-fixing agreement in violation of federal and state anti-trust laws. The defendants are Schering–Plough Corporation, Schering–Plough Health Care Products, Inc., Schering–Plough Health Care Products Sales Corporation (collectively referred to as "Schering–Plough"), Wyeth (the successor to American Home Products Corporation), and two individuals, James Mackey and Samuel Severino.[1]

Now before the court are Mackey's and Severino's renewed motions to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Specifically, despite the Court of Appeals of Maryland's recent opinion on a dispositive certified question submitted by this court, i.e., whether Maryland recognizes the "conspiracy theory" of personal jurisdiction, *see Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 892 A.2d 479 (2006), the two individual defendants argue that Maryland's long-arm statute is inapplicable to them because they did not have regular contacts with Maryland, and therefore a court in Maryland may not exercise personal jurisdiction over them in this case. In addition, they argue that the complaint should be dismissed based on the fiduciary shield doctrine. Finding neither of these argu-

---

1. Mackey is Senior Vice President of Sales at Schering–Plough and Severino was the Director of Special Markets at American Home Products Corporation.

ments persuasive, for the reasons explained fully below, I shall deny the motions to dismiss.

## I.

The complaint alleges that Mackey and Severino conspired with each other and with the other's employer to cut the brokerage fees their respective companies paid to Compass, a Maryland-based broker of health-care products. On July 27, 2004, Mackey and Severino, both residents of New Jersey, filed motions to dismiss for lack of personal jurisdiction, contending, *inter alia*, they did not have the requisite minimum contacts with Maryland to satisfy the Maryland long-arm statute. I certified to the Court of Appeals of Maryland the following question: whether Maryland recognizes the conspiracy theory of personal jurisdiction? [2]

The Court of Appeals of Maryland issued its opinion on February 9, 2006, holding that Maryland law recognizes the conspiracy theory of personal jurisdiction. In reaching its decision, the court equated a conspirator with an agent for purposes of the long-arm statute, and noted that "Maryland's long-arm statute explicitly grants jurisdiction over a principal based on acts performed through an agent." *Id.* at 125, 892 A.2d 479. The court reasoned as follows, in part:

> Courts have drawn routinely from the substantive law of agency to justify the exercise of personal jurisdiction over nonresident defendants. Imputation, or attribution, of jurisdictional contacts is not a new notion. It is long-established that personal jurisdiction may be exercised over a nonresident defendant on

the basis of the actions of the nonresident defendant's agent.

*Id.*

Despite the decision from the Court of Appeals, Mackey and Severino renewed their motions to dismiss for lack of personal jurisdiction on March 21, 2006.

## II.

The essence of the defendants' first argument is that, while the Court of Appeals recognized conspiracy jurisdiction, that jurisdiction does not apply to them under § 6–103(b)(4) of the Maryland long-arm statute, which states the following:

> A court may exercise personal jurisdiction over a person, who directly or by an agent ... [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

MD. CODE ANN., CTS. & JUD. PROC., § 6–103(b)(4) (West 2002).[3]

In advancing their argument, defendants interpret the section to have two requirements: (1) that the defendant cause tortious injury, and (2) that the defendant engage in a "persistent course of conduct in the State." The defendants then argue that, under the Court of Appeals' holding, only the first requirement can be imputed to the co-conspirator. According to defendants, the requirement that plaintiff demonstrate the existence of a "persistent course of conduct in the State" is nontransferrable or imputable; rather, they

---

**2.** I also certified a second question: "If Maryland recognizes the conspiracy theory of jurisdiction, what elements must a plaintiff allege for a court to have jurisdiction over the out-of-state defendant under that theory?"

**3.** The parties also debate the applicability of other sections of the Maryland long-arm statute to the defendants. Because I find that § 6–103(b)(4) is satisfied, I need not consider those other provisions.

contend, plaintiff must show that each defendant conspirator personally engaged in a "persistent course of conduct in the State." I disagree.

## A.

This interpretation of how the conspiracy theory of personal jurisdiction applies to § 6–103(b)(4) defies logic, and I am satisfied it was not the intent of the Court of Appeals of Maryland. First, the defendants fail to take into consideration conspiracy law, in which the underlying acts of one conspirator are attributable to another conspirator. Second, by analogizing conspiracy jurisdiction with agency jurisdiction, the Court of Appeals makes it clear that jurisdictional contacts are imputable.

Defendants argue that "because Compass has not alleged that Schering's and Wyeth's persistent course of business in Maryland was conducted during and in furtherance of the putative conspiracy, its allegations fall short even if the conspiracy theory may be used to circumvent the 'persistent course of conduct' requirement." Renewed Mot. to Dismiss at 9. Defendants fail to recognize, however, that Schering–Plough's and Wyeth's contacts with Compass—through the regular course of business—were part of the conspiracy. In other words, in this circumstance, it is impossible to separate the tortious acts of the conspiracy with the facts that give rise to jurisdiction.

For example, Compass alleges that the ongoing conspiracy was entered into around March 30, 2001. Compass also alleges that business continued between Compass and the defendant corporations for some time after March 30, 2001. Dur-

ing that course of business, according to the Complaint, Compass suffered injury as a result of the price-fixing conspiracy. Therefore, it is clear that not only were jurisdictional contacts established during that period, but that those contacts were in furtherance of the conspiracy. That being the case, those contacts are imputable to the individual defendants. *See McLaughlin v. Copeland,* 435 F.Supp. 513, 530–32 (D.Md.1977) (attributing an overt act to a co-conspirator who otherwise would not have had jurisdictional contacts because "when individuals join in a conspiracy the acts of one conspirator are attributable to each co-conspirator"). The defendants' argument fails on this ground.

In addition, by analogizing conspiracy jurisdiction with agency jurisdiction, the Court of Appeals made it clear that the jurisdictional contacts of one conspirator can apply to another. The court points out that § 6–103(b)(4) "explicitly grants jurisdiction over a principal based on acts performed through an agent." *Mackey,* 391 Md. at 125, 892 A.2d 479. The court states that the same principles that apply on an agency theory apply on a conspiracy theory. It is an inexorable inference, therefore, that the court intended jurisdictional contacts to be transferrable and imputable in conspiracy cases just as they are in agency cases. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316–19, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (holding that the sufficiency of a corporation's contacts with a forum state are to be determined by reference to "activities carried on in its behalf by those who are authorized to act for it"); *Mackey,* 391 Md. at 125, 892 A.2d 479 (quoting same from *International Shoe*).[4]

---

**4.** Of course, if an agent or co-conspirator acts unilaterally outside the scope of the relationship, jurisdiction may not be imputable. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The uni-

lateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

In the instant case it is not disputed that Schering–Plough and Wyeth both transact substantial business in Maryland. In addition, the defendant corporations have the numerous contacts with the plaintiff in relation to the alleged conspiracy. Because Wyeth's employee, Severino, is alleged to have conspired with Schering–Plough, Schering–Plough can be considered the agent of Severino, and its related business transactions are attributable to Severino. Likewise, because Schering–Plough's employee, Mackey, is alleged to have conspired with Wyeth, Wyeth may be considered an agent of Mackey, and its related business transactions are attributable to Mackey. Thus, the Maryland long-arm statute, § 6–103(b)(4), is satisfied, exactly as was contemplated by the Court of Appeals.

### B.

■ In addition to finding that the long-arm statute is satisfied, I must be sure that the exercise of personal jurisdiction over Mackey and Severino comports with the Due Process Clause of the Fourteenth Amendment. *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. I find that it does.

The pertinent question in this analysis is whether, under the conspiracy theory of personal jurisdiction, a potential conspirator has fair warning that his participation could subject him to the jurisdiction of a foreign forum. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (asking the same question but for a manufacturer-distributor relationship). As the Court of Appeals pointed out, this question is answered by the very nature of a conspiracy theory:

> According to the conspiracy theory, a co-conspirator can be subjected to the personal jurisdiction of a particular forum only if the coconspirator had a reasonable expectation, at the time the co-conspirator agreed to participate in the conspiracy, that acts to be done in furtherance of the conspiracy by another co-conspirator would be sufficient to subject that other co-conspirator to personal jurisdiction in the forum.

*Mackey*, 391 Md. at 134, 892 A.2d 479 (citing to *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005)).

Applying this reasoning to the instant case, it is fair to conclude that, if the allegations against Mackey and Severino are true, then they were reasonably on notice that the conspiracy would significantly touch Maryland, and they could be haled into court in Maryland. Due process, therefore, is satisfied. This court may exercise personal jurisdiction over Mackey and Severino.

### III.

■ Defendants also argue that the claims against them should be dismissed because of the fiduciary shield doctrine. This doctrine "protects an individual who acts in the forum state solely as the representative of the corporation from suit in that state because he does not personally avail himself of the laws and protection of the forum state in any meaningful way." *Zeman v. Lotus Heart, Inc.*, 717 F.Supp. 373, 375 (D.Md.1989).

■ The use of this doctrine in Maryland, however, has been limited in recent years. In *Christian Book Distributors, Inc. v. Great Christian Books, Inc.*, 137 Md.App. 367, 393, 768 A.2d 719 (2001), the Court of Special Appeals noted that the doctrine is not to be considered a rigid, constitutional principle. Rather, it is to be used as a consideration of equity, and it "will only be applied in very unusual circumstances that we cannot presently foresee and articulate." *Id.*

■ This certainly is not a case in which to dust off this rarely used doctrine. Compass alleges in its complaint that the two

individual defendants were long-time friends or business colleagues, Complaint at ¶ 49, who were at the very center of the conspiracy, Complaint ¶¶ 48–53. In other words, taking the allegations as true as required in considering a Rule 12(b) motion, Mackey and Severino were not the type of blameless employees who were merely the ignorant human instruments of a larger corporate scheme. Accordingly, I shall not apply the fiduciary shield doctrine in this case.

## IV.

For the reasons set forth, defendants' renewed motion to dismiss is DENIED.